FREDERICK W. CHANDLER v. NEWELL W. BURDETT'S ADM'RS.

Motion for *venditioni exponas* to sell real estate levied on during the lifetime of the defendant in execution since deceased, refused on the ground that upon the death of the defendant in execution, his property, and all claims against him, passed under the supervision of the County Court.   Administration had been opened.

See this case as to priority of claims against estates of deceased persons.

Error from Travis.   Tried below before the Hon. Thomas H. DuVal.

The levy was on land in the county of Travis, and the lien of the judgment was still subsisting.   Letters of administration had been issued on the estate of Newell W. Burdett, the defendant in execution; and the administrators had notice of the motion for a *venditioni exponas*.

Chandler v. Burdett.

*Chandler & Turner*, for plaintiff in error. The Court below refused the motion upon the ground that the remedy was alone in the County Court. The effect of such a rule would be to divest a Court of superior jurisdiction of a matter over which it had acquired jurisdiction, and vest the same in a Court of inferior jurisdiction; which is at war with the long established rules upon this subject and against the ruling of this Court. (See Bennett v. Gamble, 1 Tex. R. 124; 8 Id. 451.) The last case in principle covers the ground, as we believe. The lien of the plaintiff is of such a character that the County Court would be bound to prefer it over all others. Then why the reason to make a bill of costs in that Court, in order to obtain the same ends to which the District Court could arrive by the means asked by plaintiff?

*Hancock & West*, for defendants in error. By the death of Burdett before a sale, the execution, under our system, lost its efficacy. (Conkrite v. Hart, 10 Tex. R. 140.) Before the application for a *vendi* was made the jurisdiction of the Probate Court had attached. The judgment was a lien, and as such is specially provided for in the law. The law was meant for just such cases. (Hart. Dig. Art. 1168, 1187.) This doctrine has been held by the Supreme Court in two cases; a contrary doctrine would be subversive of our statute. (Robertson v. Paul, 16 Tex. R. 472; Boggess & Peck v. Lilly, Austin, 1856.)

HEMPHILL, CH. J. The object of this proceeding is to enforce, by order of *venditioni exponas*, an execution which had been levied upon the property of N. W. Burdett in his lifetime. The question is: What was the effect of his death before sale? Could the execution be enforced after his death, as at Common Law? Or must application be made to the County Court for an order to sell the property levied upon?

This question was decided in Conkrite v. Hart & Co., 10 Tex. R. 140, with reference to the Probate Law of 1846; and if, under that law, it was held that an execution abated by the death of the defendant, and that a sale on the execution after his death was void and conveyed no title, much more clearly and positively is this the law under the statute of 1848. From the provisions, and general scope of the statute, it is very apparent that the whole of the estate of a deceased person, and all claims against it, must come under the supervision and control of the County Court.

The statute directs the order in which debts shall be paid. Debts secured by a mortgage, or having a lien by judgment, &c., are to be paid out of the proceeds of the property subject to such lien ; but they have no preference over other debts, except with regard to the property so subject ; nor are they the debts first in order. These are 1st. Funeral expenses, and those of the last sickness. 2d. The expenses of administration, including the allowances made to the widow and children, and expenses incurred in the preservation, &c., of the estate. Then come the debts secured by lien. If executions were enforced by sale, the whole policy and structure of the rules for the settlement of estates of deceased persons would be deranged. The property might be sacrificed at forced sale, and thus leave perhaps debts of a class superior to judgments, unpaid ; and with a certainty that debts of the lower, or fourth class, would be sacrificed. The statute has provided for the payment of judgments. It disregards their lien so far as this may be necessary to secure the payment of the two first classes of liabilities. Beyond this it preserves the lien, to be enforced, however, under process from the County Court. In Robertson v. Paul, 16 Tex. R. 472, it was held that a mortgage with power to sell could not, after the death of the mortgagor, be enforced, except in the mode prescribed by the statute, and that the death of the mortgagor was from the effect of the statute a virtual revocation of the power in the mortgagee to sell. (Boggess & Peck v. Lilly, decided at Austin, 1856.) There was no error in the judgment, and it is ordered that the same be affirmed.

Judgment affirmed.