## W. A. TAYLOR v. D. E. SNOW.

1. EXECUTION SALE—NULLITY.—A sale of property under execution, after the death of the defendant, is only relatively void.   The title acquired by such sale cannot be maintained against the administrator or parties acquiring title under and through the administration.

2. SALE UNDER VOID OR VOIDABLE JUDGMENT—HOW ATTACKED.— Such sale may be avoided by any party having an interest in the property, if he should seek to do so in the proper time and manner. It cannot be set aside where there has not been and cannot be an administration upon the estate, in a collateral proceeding, upon grounds going to the validity of the judgment, rather than of the execution.

3. JUDGMENT—COLLATERAL ATTACK.—The fact that the defendant died before the rendition of the judgment under which the execution sale was made, is a matter attacking the judgment; and in a collateral proceeding, when interposed to defeat an action of trespass to try title for land sold on such execution, will not defeat the action.

APPEAL from Hamilton.   Tried below before the Hon. John
P. Osterhout.

The facts are given in the opinion.

*James C. Walker,* for appellant, cited and discussed Paschal's
Dig., art. 25;  Freem. on Judg., 126, 131, 134, 330; Thouvenin
*v.* Rodrigues, 24 Tex., 477;  Selin *v.* Snyder, 7 S. & R., 166;
Farr *v.* Ladd, 37 Vt., 156;  Aultman *v.* McLean, 27 Iowa,
129;  Penobscot R. R. Co. *v.* Weeks, 52 Me., 456;  Morgan
*v.* Burnett, 18 Ohio, 535;  Segee *v.* Thomas, 3 Blatch., 11;
DeVuindre *v.* Williams, 31 Ind., 444;  Westervelt *v.* Lewis, 2
McL., 511;  Riley *v.* Waugh, 8 Cush., 220;  Hahn *v.* Kelley,
34 Cal., 391;  Sharp *v.* Brunnings, 35 Cal., 528;  Lawler *v.*
White, 27 Tex., 250;  Coit *v.* Haven, 30 Conn., 190;  Nash *v.*
Church, 10 Wis., 312;  Richards *v.* Skiff, 8 Ohio St., 586;
Gemmell *v.* Rice, 13 Minn., 400;  Beech *v.* Abbot, 6 Vt.,
586;  Matter of Clark, 3 Denio, 167;  Williams *v.* Stewart,
3 Wis., 773;  Fletcher *v.* Holmes, 25 Ind., 458;  Dunn *v.* Pipes,
20 La. Ann., 276;  Bradford *v.* Bradford, 5 Conn., 127;  Gates
*v.* Preston, 41 N. Y., 113;  Green *v.* Hamilton, 16 Md., 317;
Mills *v.* Alexander, 21 Tex., 162;  Rorer on Judic. Sales, 72,
and note;  Bohanan *v.* Hans, 26 Tex., 445;  Moke *v.* Brack-
ett, 28 Tex., 446;  Lawler *v.* White, 27 Tex., 253;  Grignon *v.*
Astor, 2 How., 340;  McMullen *v.* Guest, 6 Tex., 275;  Butter-
worth *v.* Kinsey, 14 Tex., 500;  Wilson *v.* Zeigler, 44 Tex.,
660;  Kegans *v.* Allcorn, 9 Tex., 34;  Grassmeyer *v.* Beeson,
13 Tex., 530;  Kitchen *v.* Crawford, 13 Tex., 520;  Foot *v.*
Stevens, 17 Wend., 483;  Grassmeyer *v.* Beeson, 18 Tex., 753;
Giddings *v.* Steele, 28 Tex., 755;  Wyche *v.* Clapp, 43 Tex., 546;
Hancock *v.* Metz, 15 Tex., 205;  Coffee *v.* Silvan, 15 Tex.,
354;  Castro *v.* Illies, 22 Tex., 479;  Andrews *v.* Richardson,
21 Tex., 287;  Boggess *v.* Howard, 40 Tex., 153;  Owen *v.*
Navasota, 44 Tex., 521;  Dewes *v.* Head, 3 Pick., 143;  Har-
vey *v.* Richards, 1 Mason, 381;  Garrett *v.* Gaines, 6 Tex., 441;
Ellis *v.* Rhone, 17 Tex., 132;  Glavecke *v.* Tijirina, 24 Tex.,
672;  DeLeon *v.* Owen, 3 Tex., 154;  Moke *v.* Brackett, 28

Tex., 446; Hurt *v.* Horton, 12 Tex., 285; Wardrup *v.* Jones, 23 Tex., 489; Dean *v.* Nelson, 10 Wall., 172.

*Sleeper, Jones & Kendall,* for appellees.

Moore, Associate Justice.—Appellant, as well as the appellees, claims to deraign title to the land in controversy in this suit, from Claiborne A. Johnson, to whom it was patented, July 17, 1845.

Appellant, who was plaintiff in the court below, claimed to have acquired his title through a deed from the sheriff of Bell county, dated December, 1851, to James A. Graves, as a purchaser at an execution sale, by virtue of a judgment rendered by the District Court of Bell county—in which county said land was then situated—at its Spring Term, 1857, in favor of James A. and Mary Graves, his wife, adm'r, &c., against said Johnson; while appellees deraign their title through a deed dated May 11, 1857, but not recorded until June 1, 1871, from Elizabeth A. Johnson, the mother, and sole heir of said Claiborne A. Johnson, the grantee of the land, and as whose property it had been previously sold by the sheriff under said execution.

On the trial of the case, the court instructed the jury, if they believed from the evidence that Claiborne A. Johnson was dead at the time suit by said Graves and wife was commenced, the District Court of Bell county acquired no jurisdiction of the subject-matter in litigation; that any judgment rendered against a dead man, without making his legal representatives parties, was void; that an execution issued upon such judgment, and all proceedings under it, would be also void, and could not be the foundation of a title to the land, and in such event the jury should find a verdict for the defendants.

Evidently this charge of the court is in direct conflict with the law upon the subject, as settled by the repeated decisions of this court. (Grassmeyer *v.* Beeson, 18 Tex., 753; Mills *v.*

Alexander, 21 Tex., 154; Thouvenin *v.* Rodrigues, 24 Tex., 468; Rodriguez *v.* Lee, 26 Tex., 32; Bohanan *v.* Hans, 26 Tex., 445; Moke *v.* Brackett, 28 Tex., 443; Giddings *v.* Steele, 28 Tex., 732.) And as there can be but little doubt, when the record is examined, that it must have had a controlling influence with the jury in returning a verdict for appellees, unquestionably the judgment must be reversed, unless it plainly appears, looking to the entire record, that appellees should have recovered a judgment, had the instruction given the jury in this particular been altogether unexceptionable; and if appellant had recovered a judgment in the court below, it should be reversed by this court, because not supported or warranted by the evidence.

And such, appellees insist, the record shows, is manifestly the fact in this case; for, conceding it is said that a judgment cannot be impeached in a collateral action, by proof that the person, for or against whom it is rendered, died before its rendition, and that such judgment is valid and binding until avoided by a direct and appropriate proceeding for this purpose,—still, as property cannot be sold on execution issued on a regular and valid judgment, after the defendant's death, and even where an execution is previously issued during the life of the defendant, it is abated by his death, and property upon which the judgment operates as a lien cannot thereafter be sold by the sheriff by authority of such execution, it must follow, as appellees maintain, that there is manifestly as fatal a defect in appellant's title to the land for which he sues, as if the judgment from which the execution comes should be held to be an absolute nullity, and incapable, as the jury were told, of serving as the foundation for a title. For, say appellees, if it is conceded that judgments of courts of record, upon principles of public policy, and on account of the sanctity and respect in which their proceedings are held, cannot be controverted or impeached in a collateral proceeding, they insist that these principles are inapplicable, and cannot be invoked in support of an execution,

or other process, to enforce or carry into effect such judgment, or to uphold and maintain, as valid and binding, acts, otherwise invalid, done under and in obedience to their commands.

There is no question that, in many cases, it has been held, if the defendant dies after judgment, and before execution has issued, that land of the decedent cannot be sold under an execution on such judgment until it is revived against the heirs. And even where the defendant dies after the execution has issued, and though it may have been levied, such execution, as is held by many courts will nevertheless abate, and the judgment must be revived before it can be enforced by process. And with us, it has been long since decided, that by the provisions of our probate laws, no execution can ordinarily issue against the administrator, or personal representative of a party against whom a judgment for money has been rendered. And though an execution is in the hands of the sheriff, and has been levied, if the defendant dies, the authority of the sheriff to sell under the execution is immediately at an end. (Conkrite *v.* Hart, 10 Tex., 140; Chandler *v.* Burdett, 20 Tex., 42; McMiller *v.* Butler, 20 Tex., 402.)

But we are not prepared to say that either of these cases to which we have referred sanctions so broad an application of the principle insisted upon by appellees, as claimed by them in support of this judgment. Unquestionably, where a defendant dies before the satisfaction of the judgment, our statutes require that its payment must be enforced through the probate court, and in the manner prescribed for the settlement of the estates of deceased persons, and not by execution. And if execution should issue against the defendant after his death, or his property be sold by the sheriff on an execution previously issued, it would be irregular and invalid. And such sale might, with propriety, be said to be void, because it has an inherent vice, for which it may be avoided, and held for naught, at least for the purposes of the adminis-

tration, and at the instance of those interested in the proper application of the property of the decedent to the discharge of his just liabilities. It may also be said that such sale is void, because it will be so declared when the irregularity or error which renders it so is shown by the proper parties, and in the proper time and manner, (Pearsoll v. Chapin, 44 Penn. St., 9,) just as a judgment, having the like vice, will be held void when its error is pointed out in the proper manner for invoking the action of the court upon it. But we cannot agree that a sale of property under an execution, apparently valid and regular upon its face, should be held, under all circumstances and as to all persons, absolutely instead of relatively void, and that it shall be treated as in every particular totally null and without effect, because the party against whom it issued died previous to the day of sale. Certainly, neither of the cases to which we have been referred, unless it is that of Conkrite v. Hart, give countenance to such conclusion.

The case of Chandler v. Burdett merely decides that a *venditioni exponas* will not issue against the legal representative of the defendant to sell land upon which an execution had been levied previous to the defendant's death. In Mc-Miller v. Butler, the vice in the execution and sale was shown, and the sale set aside upon terms. The case of Conkrite v. Hart is too meagerly stated by the reporter to justify any very positive conclusion as to the sense in which "the ambiguous word void" was used, or intended to be understood by the court. Although the opinion is certainly expressed in strong and emphatic language, we can scarcely think that the court intended to lay down a rule broad enough to cover the present case. But if so, we think we shall act more in consonance with right and justice, and more in conformity to the spirit of subsequent decisions, in holding that, while a sale of property under execution after the death of the defendant is relatively void, and that the title acquired by the purchaser at such sale cannot be main-

tained against the administrator, or parties acquiring their title under and through the administration, and that such sale may be avoided by any party having an interest ·in the property, if he should seek to do so in the proper time and manner,—this cannot be done where there has not been, and cannot be any administration upon the estate in a collateral proceeding in the manner and upon the facts alleged, and as here sought, upon grounds going to the validity of the judgment itself, rather than the execution. It is not pretended that anything has. occurred subsequent to the judgment to prevent the issuance of the execution, and its satisfaction by the seizure and sale of property as therein ordered. The fact or matter relied upon to show that the purchaser under the execution got no title to the property sold by the sheriff, occurred previous to the rendering of the judgment, which, in a collateral proceeding, as we have seen, cannot be impeached or annulled. But this, in effect, would seem to be done, if it is held that in a like character of proceeding the execution issued in obedience to, and in conformity with the very terms of the judgment, will be treated as absolutely null and void, on proof of the occurrence of such fact anterior to the date of the judgment, and which, if it be heard and considered, would annul the judgment.

. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.