### W. D. HOOPER v. F. W. CARUTHERS ET AL.

#### No. 3190.

1. **Homestead, Descent of.**—A homestead was acquired in 1851, bought with the wife's money. The husband died in 1854. Upon his death the homestead descended to the wife and children as community property, and it was not subject to execution for the community debts before or after the death of the husband. As against a sale under execution after the husband's death it was immaterial whether the land was the separate property of the wife or community. In either case it was void.

2. **Separate Property of Wife.**—Where land was bought during coverture with the wife's money, title being taken in the name of the husband, and the land is sold under execution, a bona fide purchaser will take title. But the burden of proving payment and absence of notice devolves upon the purchaser. See example. ·

3. **Void Judgment—Death of Sole Defendant Before Judgment.**—Conceding that it can not be shown in a collateral proceeding that a person against whom a judgment was rendered was not alive at the time, and a sale under it thus invalidated, it does not follow that an execution and sale under it will not be absolutely void—void for all purposes—if the judgment shows on its face that the party against whom the judgment was rendered was not at the date of its rendition alive, or if it be shown that his death occurred after the judgment was rendered and before the sale.

4.   **Cases Adhered to.**—Conkrite v. Hart, 10 Texas, 140; Chandler v. Burdett, 20 Texas, 42; McMiller v. Butler, 20 Texas, 402, adhered to.

5.   **Case Limited.**—Taylor v. Snow, 47 Texas, 464, limited.

6.   **Void Sale.**—A sale made under execution against a deceased person after his death, he being alive at the time judgment was rendered, is void in the same sense that it is wholly inoperative to pass title to or as against any one, and therefore may be attacked directly or collaterally.

APPEAL from Navarro.     Tried below before Hon. Rufus Hardy. The opinion states the case.

*Craft & Craft,* for appellant.— 1.  A sheriff's deed unsupported by the judgment and execution which it recites is insufficient to sustain the sale of the land it purports to convey.   Wright v. Doherty, 50 Texas, 34; Criswell v. Ragsdale, 18 Texas, 443; Walker v. Emerson, 20 Texas, 706; Hart v. McDade, 61 Texas, 208.

2.   A sheriff's sale of homestead lands made without a levy, under a levy made by a former sheriff under a former execution, even though pointed out by the defendant in execution, is void.   Ross v. Lister, 14 Texas, 469; Const. 1845, art. 7, sec. 22; Campbell v. Elliott, 52 Texas, 151–160; Thompson v. Jones, 60 Texas, 94; 77 Texas, 626; Childers v. Henderson, 76 Texas, 664.

3.   When a party plaintiff, in case of an injunction for instance, dies before the case is tried and suggestion is made to the court, the suit abates until his heirs or administrators are made parties; and a judgment dismissing the case and ordering execution to issue under another judgment is void and can be attacked collaterally.   Bissell v. Lavaca, 6 Texas, 54; Rev. Stats., arts. 1246, 1247; Pasch. Dig., art. 6; Alexander v. Barfield, 6 Texas, 400, 406; Withers v. Patterson, 27 Texas, 491.

*John D. Lee,* for appellees.— 1.  A sale under an execution issued after the death of the defendant in the writ issued under a judgment rendered during the lifetime of such defendant is not void and can not be impeached in a collateral action.   Taylor v. Snow, 47 Texas, 462; 18 Texas, 753; 21 Texas, 154; 26 Texas, 445; 57 Texas, 286.

2.   Under the Constitution of 1845 a lien attempted to be created upon a homestead during its occupancy was validated by the abandonment of the place as homestead, and a foreclosure after such abandonment passed the title.   Stewart v. Mackey, 16 Texas, 56.

3.   The seizure under the last execution was in effect a new levy, and being made long after the abandonment of the place was effectual and valid.

4.   Property conveyed by a deed taken in the name of the husband which recites an onerous consideration is presumed to be community; and a purchaser thereof who buys without notice of the claim of the wife and

pays for it a valuable consideration will take the title as against the wife. Cooke v. Bremond, 27 Texas, 457; Wallace v. Campbell, 54 Texas, 88.

STAYTON, CHIEF JUSTICE.—Appellant, through a regular chain of transfer, shows title to the land in controversy in his father, who died in 1854. The conveyance to his father was made in 1851 by a deed which purported to be on valuable consideration, and without any recognition of the fact that it was paid for with the separate means of appellant's mother, who survived his father, but on the trial this latter fact was shown.

Some objection was made to the deed conveying the land from the original grantee to the person who conveyed to appellant's father for want of description, but it was properly overruled, for the land was fully identified by the certificate on which the land was granted, which was described in that deed as well as in the patent.

The land was conveyed to appellant by his mother on April 2, 1889. That appellant's father and family, consisting of himself, a wife, and three children, lived upon the land from the time he purchased it until a short time before his death as their home, and that they had no other, is shown by the evidence.

The testimony of the mother was, "The 136½ acres involved herein was our homestead at the time of Hooper's death in 1854. Myself and Hooper never owned or claimed any other homestead in Texas."

Another witness who knew Hooper and his family intimately testified that "they (Hooper and family) settled on the land, about 1½ miles west from Corsicana, in 1851 or 1852, made some improvements on it—log cabin, etc.—and lived on it till shortly before Hooper's death in 1854, when they moved temporarily to Corsicana, for the purpose probably of living handy to doctor and assistance, there being no neighbors nearer than Corsicana."

The character of the improvements made on the land by appellant's father is further shown.

Whether Mrs. Hooper and her children lived on the land in controversy after the death of her husband does not appear, but it does appear that after the sale which appellees claim conveyed title which they offered as superior outstanding title, she removed with her children to Tennessee, where she married in 1859, since which she has been covert.

Appellees show no title in themselves, but attempt to show a superior outstanding title in another, under evidence which tends to show this state of facts:

1. That a judgment was rendered against appellant's father in favor of William Parmer in a Justice Court, at the October Term thereof for the year 1852, for $57.67.

2. That Hooper sought to have that judgment revised by certiorari, and that such a proceeding resulted in a judgment against him.

3.　That an execution issued on the judgment last referred to, which at some time prior to September 19, 1853, was levied on the land in controversy, then occupied by Hooper and family.

4.　That Hooper instituted a suit to enjoin the sale of the land under that execution and levy, but upon what ground the injunction was sought does not appear, all the papers in that suit except the judgment rendered having been destroyed, as probably were the proceedings on certiorari and all papers relating thereto.

The judgment in the injunction suit was rendered at the Fall Term, 1855, of the District Court for Navarro County, and is as follows:

"In this case it appearing to the court that the plaintiff, A. A. Hooper, had departed this life more than three courts before the present term, and no party plaintiff having been made, and the court at its last term having made its order upon the minutes that this case should be dismissed absolutely unless party plaintiff should be made at this term of the court, and it appearing to the court that no party plaintiff had been made in this suit as required by law, it is therefor considered, adjudged, and decreed by the court that this case be dismissed at the cost of the party instituting the same; and that the clerk of this court be and he is hereby ordered to issue execution on the judgment herein sought to be enjoined, and to do all things necessary to be done in enforcing and collecting said judgment for costs of this suit."

Many of the facts before stated are inferences from parol evidence and from the recitals of the sheriff's deed made under a sale by virtue of an execution issued under the judgment above copied.

From the recitals in that deed the execution issued on February 8, 1856, and commanded the sheriff to make the amount of the judgment, interest, and costs "out of the levy made as aforesaid by the former sheriff, Nat Henderson, and of the goods and chattels, lands and tenements of said Hooper."

The sheriff's deed stated that a levy had been made by the former sheriff (Henderson) in 1853, and shows that the land was sold on March 4, 1856, under the execution issued on some day as early as February 8, 1856, and that at the sale Alexander Beaton bought the land for $68.25, the receipt of which is in the deed acknowledged.

Beaton conveyed to Mills and Mills to Boynton, but it is not shown that either of these persons paid a valuable consideration for the land, unless the testimony of Beaton does.　He was attorney for the person in whose favor the judgments and executions were, and his evidence was as follows: "Don't recollect whether I paid for the land or not, but presume I did, as I have paid for all the land I ever bought.　*　*　*　I see the deed receipts for the money, and I think I must have paid it in some way or other, but don't recollect how.　Don't recollect whether I had notice or not that Mrs. Hooper claimed the land as her separate property; that it

had been so long since his purchase that he did not remember it, if he had any notice at the time of Mrs. Hooper's claim. That he was then a practicing lawyer at Corsicana; examined the title and thought it good; that he would not have bought it if he had known that it was claimed by Mrs. Hooper as her separate property. Yes, I was Parsons' attorney. There was no other way to collect the money except by sale of the land. Don't recollect how long it was after the sale of the land before Mrs. Hooper left for Tennessee."

On this state of facts a judgment was rendered in favor of defendants, who showed no title in themselves, and we are of opinion that the facts do not support the judgment.

That the property was the homestead of A. A. Hooper and family at the time of his death the uncontradicted evidence fully shows, and that title thereto then vested in his widow and children, freed from all claims of creditors, can not be denied, even if before that time the property was of the community estate of the husband and wife, and so without reference to whether it was set apart to them by decree of a Probate Court or not. Sossaman v. Powell, 21 Texas, 664.

There is no pretense or claim that the sale under which Beaton bought was made to satisfy any lien for purchase money of the land, but on the contrary the judgment of the Justice Court, which seems to have been the foundation of all the litigation, shows that it was based on a debt growing out of a rent contract.

The right of the widow and children of Hooper to the homestead could not be divested by such a sale as was made, and appellant was on this ground entitled to recover, whether the property be deemed community property or the separate estate of Mrs. Hooper.

The evidence shows clearly that the land was paid for with the separate means of Mrs. Hooper, and it thus became equitably her property; but had it not been homestead, one purchasing under execution against her husband during his life, in ignorance of her right and for valuable consideration, would have acquired a right superior to hers.

Under the evidence, if it could be conceded that the property was not homestead, could it be held that Beaton or any one claiming under him was a bona fide purchaser for value?

The burden was on appellees to show these facts, and it may well be doubted if the evidence was sufficient for that purpose.

The judgment under which the writ issued by virtue of which the sale was made on its face shows that three terms of court had passed after Hooper's death before that judgment was rendered, and we have not a case in which by reason of the judgment it ought to be presumed that a right to the execution existed at the date of the rendition of the judgment.

In Taylor v. Snow, 47 Texas, 464, from the opinion we understand that the party attacking the execution sale sought to show that the person

against whom the judgment was, died prior to its rendition, but there is much in the opinion which seems to hold that a sale under execution issued after the death of a sole defendant is not void without reference to the time of the death.

In the opinion it is said: "It is not pretended that anything has occurred subsequent to the judgment to prevent the issuance of the execution and its satisfaction by the seizure and sale of property as therein ordered. The fact or matter relied upon to show that the purchaser under the execution got no title to the property sold by the sheriff, occurred previous to the rendering of the judgment, which, in a collateral proceeding, as we have seen, can not be impeached or annulled. But this in effect would seem to be done, if it is held that in a like character of proceeding the execution issued in obedience to and in conformity with the very terms of the judgment will be treated as absolutely null and void on proof of the occurrence of such fact anterior to the date of the judgment, and which, if it be heard and considered, would annul the judgment."

Conceding that it can not be shown in a collateral proceeding that a person against whom a judgment was rendered was not alive at the time, and a sale under it thus invalidated, it does not follow from this that an execution and sale made under it will not be absolutely void—void for all purposes—if the judgment shows on its face that the party against whom the judgment was rendered was not at the date of its rendition alive, or if it be shown that his death occurred after the judgment was rendered.

In Conkrite v. Hart, 10 Texas, 140, it was held that a sale made under an execution issued during the lifetime of the debtor but levied after his death was void.

The reasoning of the court in Chandler v. Burdett, 20 Texas, 42, leads to the same conclusion, though the question arose on an application for *venditioni exponas*.

McMiller v. Butler, 20 Texas, 402, was a suit by the administrator of an estate whose lands had been sold under execution after the death of the intestate, to recover the land, the administrator agreeing to refund the price paid, with interest. Judgment went in his favor for the land and it was affirmed. This was not a direct proceeding to set the sale aside, but a collateral attack upon it, and the opinion of the court can not be read without coming to the conclusion that the court held the sale void.

In disposing of the case the court said: "But as previously said, this can not be regarded as an open question. In Conkrite v. Hart & Co., 10 Texas, 140, it was held that a sale under execution issued in the lifetime of the debtor, but levied after his death, was void. The fact that the execution was levied after the death was unimportant. * * * The decision in Conkrite v. Hart & Co. has in effect been affirmed by ·

Robertson v. Paul, 16 Texas, 472; Boggess v. Lilly, decided at Austin, 1856, 18 Texas, 200; and by Chandler v. Burdett, at this term."

In Emmons v. Williams, 28 Texas, 778, it appeared that lands belonging to the estate of a deceased person had been sold subsequently to his death under an execution against the administrator, and the latter sought to confirm the sale and to recover so much of the money as was not necessary to pay the debt.

In disposing of the case it was said, "But it is believed that the law has not in any case authorized the issuance of an execution against the estate of a deceased party, and the sale of the property of the estate under such execution will not pass title."

Conkrite v. Hart was in this case cited with approval, and the reasoning in the decisions we have cited is to our minds unanswerable.

We can add nothing to it unless by referring to the statute bearing most directly upon the matter.

The Act of February 5, 1853, provided that "In cases where a sole defendant dies after judgment for money against him, the plaintiff may proceed to establish his claim against the estate by presenting a certified copy of such judgment to the executor or administrator of such decedent, as directed by law for the settlement of estates of deceased persons; and where there are two or more defendants, one or more of whom die after judgment for money, leaving one or more surviving, then the plaintiff shall be entitled to execution against such survivor or survivors by filing an affidavit of such death with the clerk of the court, and may proceed to establish his claim against the estate of the party deceased in the mode prescribed by law." O. & W. Dig., art. 541.

Every claim for money against a testator or intestate was required to be presented to the representative of the estate and established in the mode provided by the statute before it could be paid, and to this judgments were no exception. O. & W. Dig., art. 755, *et seq.*

Article 541, Oldham & White, has been construed to mean that "where a sole defendant dies after judgment for money against him, execution shall not issue thereon, but the judgment may be proved up and paid in due course of administration." Rev. Stat., art. 2275.

Of the correctness of this legislative construction we have no doubt, and the same rule was announced in Northcraft v. Oliver, 74 Texas, 169.

Giving technical effect to a judgment, the case of Taylor v. Snow was probably correctly decided on its facts; but we are of opinion that the law is correctly stated in the other cases referred to, and that a sale made under execution against a deceased person after his death, he being alive at the time judgment was rendered, is void in the sense that it is wholly inoperative to pass title to or as against any one, and therefore may be attacked directly or collaterally.

These views lead to a reversal of the judgment; and as there is no rea-

son to believe that a different case would be made on another trial, it will be reversed and here rendered for appellant, who, as against appellees, is entitled to recover the land, whether the common estate of his father and mother or her separate estate.

*Reversed and rendered.*

Delivered November 18, 1890.