## LIPPINCOTT et al. v. TAYLOR.†

(Court of Civil Appeals of Texas. Jan. 7, 1911. On Motions for Rehearing, Feb. 11, 1911. On Second Motion for Rehearing, March 4, 1911.)

1. EXECUTION (§ 118*)—ENFORCEMENT—DEATH OF DEFENDANT—EXECUTION.

Rev. St. 1895, art. 2332, provides that, where a sole defendant dies after a judgment for money against him, execution shall not issue thereon, but the judgment may be proved and paid in due course of administration, and article 2390 declares that the death of the defendant after execution is issued shall operate as a supersedeas thereof, but the lien acquired by levy shall be enforced by the court in payment of the debts of deceased. Held, that where a judgment for taxes was rendered against a purchaser of land subject to a vendor's lien, and he died prior to a sale of the land on execution, the sale was void.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 273; Dec. Dig. § 118.*]

2. TAXATION (§ 510*)—SALE SUBJECT TO LIEN —JUDGMENT FOR TAXES.

Where the holder of a vendor's lien on certain land was not a party to a suit by the state against the purchaser for taxes, the legal title remaining in the vendor, a judgment against the purchaser had no adverse effect on the vendor's interest notwithstanding Rev. St. 1895, art. 5232b, providing that all lands returned delinquent shall be subject to a lien for delinquent taxes and shall be sold, though the owner be unknown, or though the land be listed in the name of a person, not the actual owner, and though the ownership may be changed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 946; Dec. Dig. § 510.*]

3. TAXATION (§ 728*)—SALE FOR TAXES—CONVEYANCES—ESTATE CONVEYED.

Rev. St. 1895, art. 2375, provides that when a sale under execution has been made, and the terms complied with, the officer shall execute and deliver to the purchaser a conveyance of all the right, title, interest, and claim which the defendant had in and to the property sold. Held, that where a judgment for taxes was rendered against a purchaser of land subject to a vendor's lien, and the land was sold under such judgment, the purchaser acquired the vendee's interest only.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1457–1461; Dec. Dig. § 728.*]

4. TAXATION (§ 728*) — SALE OF LAND FOR TAXES—PURCHASE OF VENDEE'S INTEREST.

Where a vendee's interest in land subject to a vendor's lien was sold under a judgment for taxes against the vendee, the purchaser under such execution acquired a mere equity to obtain title by payment of the balance of the purchase price.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1457–1461; Dec. Dig. § 728.*]

5. TAXATION (§ 821*)—RIGHTS OF PURCHASER AT INVALID TAX SALE — AFFIRMATIVE RELIEF—PLEADING.

Where, in trespass to try title, defendants claimed under a void sale against plaintiff's vendee, based on a judgment against the vendee for taxes, defendants' right to reimbursement for taxes, interest, etc., paid by them at the tax sale was a mere equity entitling them to affirmative relief only in case it was demanded in the pleadings.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1621–1629; Dec. Dig. § 821.*]

On Motions for Rehearing.

6. TAXATION (§ 595*)—JUDGMENT FOR TAXES —NATURE OF PROCEEDINGS.

A judgment against a vendee of land for taxes is personal, and not a judgment in rem.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1218; Dec. Dig. § 595.*]

7. TRESPASS TO TRY TITLE (§ 41*)—VENDOR'S LIEN NOTES—PAYMENT—EVIDENCE.

In trespass to try title, evidence held sufficient to show default in the payment of vendor's lien notes to plaintiff, warranting a conclusion that the legal title remained in him.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. §. 41.*]

8. APPEAL AND ERROR (§ 747*)—CROSS-ASSIGNMENTS OF ERROR—FILING.

Cross-assignments of error not filed in the trial court will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3053–3057; Dec. Dig. §. 747.*]

On Second Motion for Rehearing.

9. APPEAL AND ERROR (§ 742*)—CROSS-ASSIGNMENTS OF ERROR—SEPARATE PROPOSITIONS.

An assignment that the court erred in holding that plaintiff was not entitled to recover lands and in refusing to submit the question of rents to the jury, etc., was supported only by a statement that defendant S. testified that the reasonable rental value of the south half of the property in controversy from the date of a sheriff's sale when he took possession up to the time of the trial was $6 a month, that defendant M. testified that he took possession April 11, 1906, and had been in possession ever since of the south half of the land, that the reasonable value of the property from the date of sale to the present time was $6 a month. Held that, since it nowhere appeared from the statement that the court held that appellee was not entitled to recover rents or refused a request to submit the issue and did not refer to any part of the record showing such action, the statement at most showed that the issue was ignored and did not support the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Clay County; A. H. Carrigan, Judge.

Trespass to try title by William Taylor against M. E. Lippincott and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Taylor & Humphrey, for appellants. G. A. Watts and W. G. Eustis, for appellee.

CONNER, C. J. Appellee instituted this suit in the usual form of trespass to try title to lots 3, 4, 5, and 6 in block 21 of the Howeth & Eldridge addition to the town of Henrietta. Appellants pleaded not guilty and the three and ten years' statutes of limitations. After the introduction of the testimony, the court gave a peremptory instruc-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court March 22, 1911.

tion in appellee's favor, and the verdict and judgment are in accordance therewith.

There is no controversy in the testimony. Appellee proved a legal chain of title from the sovereignty of the soil to himself; all conveyances being dated prior to the 30th day of March, 1895. On that day he deeded the land in controversy to J. D. Lippincott preserving therein the vendor's lien to secure the entire recited price of the land. On November 27, 1905, in a suit by the state of Texas against J. B. Lippincott, sole defendant, the state recovered a judgment for $97.56 for delinquent taxes upon the property in controversy for the years 1895 to 1903, inclusive. Said judgment also foreclosed the lien upon the property given by the law to secure delinquent taxes. Thereafter on January 2, 1906, the sheriff of Clay county, by virtue of an order of sale authorized by the judgment, sold the property to appellant R. J. Slagle for $97.56, conveying "all of the rights, title and interest of J. B. Lippincott in the property" heretofore mentioned. The other appellant, Murmert, holds a portion of the property in controversy under a quitclaim deed from Slagle dated April 11, 1906. It further appears that J. B. Lippincott died on December 31, 1905, before the sheriff's sale to Slagle on January 2, 1906; that the purchase price (evidenced by vendor's lien notes) mentioned in the deed from appellee to Lippincott was never paid; and that on April 9, 1909, Molly E. Lippincott, surviving wife of J. B. Lippincott, reconveyed the property in controversy to appellee in settlement of the vendor's lien notes given by her husband as the purchase price of the property. It does not appear that there' has ever been any administration upon the estate of J. B. Lippincott.

[1] It is insisted in the first and second assignments of error that the court erred in giving the peremptory instruction in favor of appellant; the contention being that the sale of land under the judgment for taxes vested title in appellant Slagle until such sale was set aside by a direct proceeding brought for that purpose, and this raises the only question presented. In the leading case of Taylor v. Snow, 47 Tex. 462, 26 Am. Rep. 311, principally relied upon by appellants in support of their contention, it was held that a sale by virtue of a judgment entered after the death of the defendant in the judgment was not absolutely void, but could only be set aside on the ground of the defendant's death in a direct proceeding brought for the purpose. The judge in writing the opinion uses expressions that seem to apply here; but in the later cases of Fleming v. Ball, 25 Tex. Civ. App. 209, 60 S. W. 985, and Hooper v. Caruthers et al., 78 Tex. 432, 15 S. W. 98, the case of Taylor v. Snow was limited to the facts of that particular case, and it is to be observed that in the case we now have before us the defend-

ant died after the rendition of the judgment but before the sale. We have a statute (Revised Statutes, art. 2332) which provides that "where a sole defendant dies after the judgment for money against him, execution shall not issue thereon, but the judgment may be proved up and paid in due course of administration." This statute is possibly susceptible of the construction that it applies only to cases where the death of the defendant occurs after judgment and before the issuance of any execution. But, regardless of this distinction, it has been held that under an execution issued in the lifetime of a defendant, proceedings subsequent to his death are void. Conkrite v. Hart & Co., 10 Tex. 140; Boggess v. Lilly, 18 Tex. 200; Barton v. Nix, 20 Tex. 42; McMiller v. Butler, 20 Tex. 403; Tuttle v. Turner, 28 Tex. 776. The rule established by these authorities seems to have been questioned in Webb v. Mallard, 27 Tex. 80; but the later cases of Hooper v. Caruthers and Fleming v. Ball, supra, seem to affirm it. A consideration of the article of the statute that we have quoted and of other laws regulating the estates of deceased persons evidently indicates that it is the legislative policy of this state to have all claims against decedents, however evidenced, and however secured, to be settled through the probate court. In view of which and of the supporting authorities hereinbefore cited, we conclude that the sale of the land in controversy to appellant Slagle by the sheriff of Clay county was absolutely void and can be so declared in this proceeding.

[2] But, if mistaken in the foregoing conclusion, there is yet another view of the case that it seems to us is conclusive in appellee's favor. As before stated, the title was in him at the date of his deed of J. B. Lippincott, and, under a long line of decisions that we need not here cite, the legal title to the property in controversy remained in appellee until payment of the purchase money, which it is conceded never occurred. Appellee was not a party to the state's suit against J. B. Lippincott, and the judgment, therefore, had no adverse effect as to his rights. See Nunley et al. v. Blanton, 126 S. W. 1110; Wren v. Scales, 119 S. W. 879; Scales v. Wren, 127 S. W. 164; Blair v. Guaranty Savings Loan & Investment Co., 118 S. W. 608; Bradley v. Janssen, 93 S. W. 506.

It is true, as appellants insist, that article 5232b of the Revised Statutes relating to delinquent taxes provides that all lands or lots which have been returned delinquent shall be subject to a lien for the delinquent taxes and may be sold under the judgment of the court for all taxes, interest, penalty, and cost shown to be due by assessment, although the owner be unknown, or though it be listed in the name of a person not the actual owner, and though the ownership be changed. This, however, we think can mean no more

than that the lien for the taxes, and, in a proper proceeding and against the proper persons, the powers of foreclosure and sale therefor, cannot be destroyed by mutations of title. It cannot mean, as appellants at least seem to insist, that the state shall have the power to destroy the title of the real owner or as against him foreclose the tax lien in a suit or proceeding to which he in no way has been made a party. To so hold is in conflict with the decisions we have cited and with the state and federal constitutional provisions guaranteeing a citizen against a deprivation of his property save by "due process of law." [3] Article 2375, Revised Statutes, provides that when a sale under execution has been made and the terms thereof complied with, the officer shall execute and deliver to the purchaser "a conveyance of all the right, title, interest and claim which the defendant in execution had in and to the property sold." The sheriff's deed to appellant Slagle purported on its face to convey no greater title or interest than this. What was such interest? [4] It could have been no right other than the right Lippincott had to pay appellee's purchase-money notes and thereby obtain full title to the property in controversy. In no other way, in the absence of title by limitation or otherwise, could he defeat the action of the vendor. His right, and of course that of his vendee, Murmert, was at most a mere equity, and it is not pretended that any offer was made by either of the defendants to avail themselves of the right to obtain title by the payment of the purchase money.

[5] So, too, the right of appellants, if any, to recover taxes, interest, etc., paid by them at the tax sale was no more than an equity entitling them to affirmative relief which they did not set up in their pleadings.

The foregoing conclusions lead to an affirmance of the judgment, and it is so ordered.

### On Motions for Rehearing.

[6] Appellants insist that the judgment against Lippincott is one in rem, and therefore that this case is to be distinguished from those authorities cited in our original opinion as supporting our conclusions, and that we should be governed by the case of Taylor v. Snow, 47 Tex. 462, 26 Am. Rep. 311. In this conclusion, however, we are unable to agree. The statement of facts thus presents the judgment as introduced and proven, viz.: "A judgment rendered in the district court of Clay county, November 27, 1905, for $97.56 in favor of the state of Texas, plaintiff, against J. D. Lippincott, sole defendant, for taxes for the years 1895 to 1903, inclusive, on the land in controversy, foreclosing the lien and ordering the said property sold, in which suit the defendant J. D. Lippincott was sued as a

nonresident and served by publication, to which judgment plaintiff objected" for reasons not material to state. We see no reason to distinguish this judgment from that of any other in which a personal judgment is taken against the defendant with a foreclosure of the lien and think it very widely different from one in rem, if that distinction is of importance in this case. It is possible that the view of appellants is that, inasmuch as the defendant was sued as a nonresident and served by publication, no personal judgment could be taken against Lippincott in accordance with the rulings in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, and other cases that are quite familiar in the minds of the profession. But there was nothing in the record before us that conflicts with the inference that, notwithstanding the citation by publication, Lippincott answered in the suit, and every inference we think is to be indulged in favor of the conclusion of the trial court. Upon this branch of the case, and as supporting our original conclusion, we also wish to cite an article of our statute that escaped the writer upon the original hearing, viz., article 2390, which reads as follows: "The death of the defendant after the execution is issued shall operate as a supersedeas thereof, but the lien of the execution, when it has been acquired by a levy, shall be recognized and enforced by the county court in the payment of the debts of the deceased."

[7] Appellants further insist that there is no proof of the nonpayment of the notes given by Lippincott to appellee for the land, the burden to do which is upon appellee; but in this, too, we think appellants mistaken. The deed from Wm. Taylor to Lippincott which was read in evidence without objection shows that the entire consideration was evidenced by promissory notes, and the statement of facts shows that "plaintiff (Wm. Taylor) proved that the said deed from Mollie E. Lippincott was executed by the said Mollie E. Lippincott, and that she was paid the sum of $10, and that the vendor's lien notes for the sum of $700 each executed by J. D. Lippincott to Wm. Taylor were canceled and surrendered to her when she executed the deed." This at least authorizes the conclusion that the vendor's lien notes had not been paid, and that hence the legal title remained in Wm. Taylor, as we concluded in our original opinion.

[8] Appellee also presents a motion for rehearing assigning error to our failure to act upon his cross-assignments going to the action of the court in denying him rents; but the cross-assignments were never filed in the court below and hence are not to be considered. Patterson v. Seeton, 19 Tex. Civ. App. 430, 47 S. W. 733; Morrow v. Terrell, 21 Tex. Civ. App. 28, 50 S. W. 735.

The motions for rehearing by all parties are, accordingly, overruled.

## On Second Motion for Rehearing.

This is a second motion for rehearing filed in behalf of appellee without leave granted therefor and, therefore, not entitled to consideration as a motion. By it, however, our attention has been called to the fact that, in disposing of appellee's cross-assignment of error on a former day of the term, we were mistaken in doing so upon the ground that such assignment had not been filed in the court below. The single copy of the brief containing the clerk's certificate of such filing indorsed on an inner fold of the brief was overlooked by the writer, and not finding any such cross-assignment in the transcript nor in a filed brief made the mistake indicated. We regard the mistake immaterial, however, inasmuch as we think the ruling justified on another ground not before noticed.

[9] The cross-assignment, together with its supporting statement, as presented in the brief, there being no separate proposition, is as follows: "The court erred in holding that the plaintiff was not entitled to recover rents and in refusing request of plaintiff that the question of rents be submitted to the jury, and in rendering judgment against plaintiff that he take nothing as to rents, and in not instructing the jury to find for plaintiff rents in the sum of $6 per month from the 2d day of January, 1906, to the date of the trial. Statement. The defendant R. J. Slagle testified that a reasonable rental value of the south half of the property in controversy from the date of the sheriff's sale when he took possession up to the date of trial was $6 per month. Defendant E. L. Murmert testified: 'I took possession on the 11th day of April, 1906, and have been in possession ever since; that is, the south half. The reasonable rental value of said property from date of sale, January 2, 1906, to the present time, is the sum of $6 per month; that is, for the south half that I am in possession of.'"

We think it apparent that, if the assignment itself is not objectionable as containing more than a single proposition, the statement entirely fails to support the assignment. From the statement it nowhere appears that the court held that appellee was not entitled to recover rents or omitted or refused a request for the submission of the issue, nor by reference to the record have we been able to find any such action on the part of the court. The court's charge simply ignored the issue, and the error, if any, was one of omission merely calling for a requested instruction, and the record discloses no such request.

We therefore, notwithstanding the mistake noted, think our former conclusion upon the motion for rehearing should remain undisturbed.