## LOVE v. R. S. ALLDAY SUPPLY CO. et al.
### No. 1669.

Court of Civil Appeals of Texas. Eastland.
May 7, 1937.

Rehearing Denied June 11, 1937.

Newland & Cornett, of Linden, for appellant.

Carney & Carney, of Atlanta, and Phillips, Trammell, Chizum, Estes & Edwards, of Fort Worth, for appellees.

LESLIE, Chief Justice.

The appellant instituted this suit in trespass to try title against R. S. Allday Supply Company and the Arkansas-Louisiana Gas Company, a corporation, to recover an undivided one-half interest in 136 acres of land situated in Cass county, Tex. The Supply Company answered by plea of not guilty, general denial, limitation, and bona fide purchaser for value without notice, etc. The Gas Company made general denial and pleaded limitation under various statutes. At the conclusion of the trial the court instructed a verdict in favor of the defendants, and plaintiff appeals, attacking the judgment by four assignments of error.

If the appellant Alvin Love owned said interest in the 136 acres of land, he inherited it from his mother, Lillie Sparks Green, who died in 1914. The appellant, a negro, was born out of wedlock in 1895. His mother's name was Lillie Sparks. He took the name of Alvin Love. In 1896

the mother married Joseph Green, who is not the father of Alvin Love.

September 11, 1901, the Frank Bivins Lumber Company, a corporation, conveyed the 136 acres of land to Joseph Green for $204 cash paid. He and wife occupied it as their homestead and Alvin lived with them on the place until the death of his mother (1914). No children were born to Green and wife. At her death she was survived by said husband and Alvin, her only child. Appellant continued to reside on the land with the stepfather until the former went to war, and after the war he returned and continued to live on the farm as before until 1920, at which time he moved away and has not since that date resided on the land.

Concerning his interest in the land and his connection therewith subsequent to the death of his mother, he testified in part as follows:

"A. I left it in 1920. * * *

"Q. Now, then, you left the Joseph Green place—you left that place when? A. 1920. * * *

"Q. Have you ever been back to it since you left it in 1920? A. Yes, sir, I go back once in a while.

"Q. But you have never lived on it since 1920? A. No sir. * * *

"Q. You have never claimed to own any part of this land since 1914 when your mother died? A. No sir.

"Q. You never rendered it for taxes? A. No sir.

"Q. Never paid any taxes? A. No sir.

"Q. Never exercised any ownership on it or been on it or lived on it during that time? A. No sir."

After the death of Lillie Sparks Green, Joseph Green married Mollie Wyatt some time prior to the year 1928. There is evidence that he had been married two or three times prior to his marriage to appellant's mother.

The taxes on the 136 acres became delinquent for the years 1926 and 1927. At the September term (1928) of the district court of Cass county, the State of Texas instituted suit against Joseph Green and each and all other persons owning and claiming an interest in and to said land to recover the taxes and foreclose the lien securing same. At the following October term a decree was entered against Joseph Green for the recovery of said taxes and

a foreclosure of the lien. Among other recitations, the judgment contains this one: "* * * and the defendant Joseph Green having been heretofore duly and legally served with citation in this cause came not but wholly made default."

Pursuant to the judgment, order of sale issued in due time, and its execution resulted in a sale of the land on December 5, 1928, by the sheriff, who executed a deed to the land to L. F. Allday, trustee for R. S. Allday Supply Company. On December 31, 1934, the Supply Company, acting through the partners composing it, executed an oil and gas lease on said land to O. J. Rowe. On January 8, 1935, Rowe assigned the lease to appellee Arkansas-Louisiana Gas Company. At the time of the sale and the execution of the sheriff's deed, Joseph Green and his last wife, Mollie Wyatt Green, were living on the land. As stated, the appellant Love was not then living thereon and had not been living there since 1920.

In February, 1929, after the tax sale in December, 1928, Joseph Green rented the land from the Supply Company for the year 1929. Thereafter the Supply Company rented the premises to Green and Clifford Wyatt for 1930, 1931, 1932, and 1933. In 1934 the Supply Company rented the land to Jordan Cole, but Joseph Green, being unable to do any great amount of farming, remained on the land and worked about a half acre of corn around the house. This was with the consent of the Supply Company.

A careful consideration of the testimony discloses that at the date of the execution sale the R. S. Allday Supply Company did not know that the appellant Alvin Love was claiming any interest in the land, that Joseph Green acquired same during his marriage to the appellant's mother, or that the mother had in her lifetime any interest in the land. Joseph Green never told them that the appellant, or any one else, owned any interest in the land. That they never heard that Love was claiming an interest in it until about the time this suit was instituted in 1935. That after they purchased the land in 1928 they rendered it each year for taxes, paying the same. That the farm has been cultivated continuously by tenants of the Supply Company since 1928. The evidence further establishes that the Supply Company did not know at the time of the sheriff's deed that Joseph Green had been married prior to his marriage to Mollie Wyatt Green, with whom he was then living.

Under the facts stated, it is obvious that when the Bivins Lumber Company conveyed the land originally to Joseph Green the same became the community property of himself and the appellant's mother; but her title thereto was equitable, and when she died in 1914 whatever interest or title appellant inherited in the land through his mother, the same was also equitable. Hence, the appellant in this suit seeks to recover upon the strength of his equitable title—the legal title to the land resting in the appellees. It has often been held in this state that an equitable title inherited by a child through his mother, of community property, legal title to which was in the name of the husband, will not prevail over the *legal title acquired by a bona fide purchaser from the husband after the wife's death.* Patty v. Middleton, 82 Tex. 586, 17 S.W. 909; Strong v. Strong (Tex.Com.App.) 98 S.W.(2d) 346; Commonwealth Bldg. & Loan Ass'n v. Howard (Tex.Civ.App.) 61 S.W.(2d) 546, affirmed (Tex.Com.App.) 94 S.W.(2d) 144; Turner v. California Co. (C.C.A.) 54 F.(2d) 552.

It is equally well established that a purchaser at an execution sale will be deemed an innocent purchaser where he would have been deemed such at a voluntary sale. Article 3818, R.S.1925; Holmes v. Buckner, 67 Tex. 107, 2 S.W. 452; Borden v. Tillman, 39 Tex. 262; Hooper v. Caruthers, 78 Tex. 432, 15 S.W. 98; Wright v. Lassiter, 71 Tex. 640, 10 S.W. 295.

It follows that the bona fide purchasers' legal title at an execution sale, after the death of the wife, of community property taken in the name of the husband, will prevail over an equitable title inherited by a child through its mother prior to the execution sale. Smith v. Olsen, 23 Tex. Civ.App. 458, 56 S.W. 568 (writ ref.); Cline v. Upton, 56 Tex. 319.

Further, it must be borne in mind that tax foreclosure sales are governed by the same rules governing judicial sales generally. This is due to the statute and authorities construing same. Article 7328, R.S.1925, as amended by Acts 1927, 1st Called Sess., c. 99, § 11 (Vernon's Ann. Civ.St. art. 7328); State Mortgage Corporation v. Ludwig, 121 Tex. 268, 48 S.W. (2d) 950. It follows that one can be a

bona fide purchaser at a tax foreclosure sale. Williams v. Young, 41 Tex.Civ.App. 212, 90 S.W. 940 (writ ref.). It is further provided by statute that a tax deed vests good and perfect title in the purchaser thereof, subject to be impeached only by actual fraud. Article 7330, R.S.1925, and article 7328, as amended.

In the instant case the appellant makes no attack upon the regularity of the tax suit and sale, and no fraud is charged against appellee R. S. Allday Supply Company in purchasing the property at the execution sale. Therefore, the question that is determinative of this appeal is whether the appellant claiming an equitable title to the land can defeat the purchaser of the legal title at a valid tax foreclosure sale without first showing that such purchaser had notice of the outstanding equitable title of the appellant or that he failed to pay value—the appellant not being a party to the tax suit. In such situation the holder of the equitable title must plead and prove that the purchaser of the legal title had notice of his equitable title or failed to pay an adequate consideration for the land, before he can defeat the legal title. Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973; Strong v. Strong (Tex.Com.App.) 98 S.W. (2d) 346; Moore v. Humble O. & R. Co. (Tex.Civ.App.) 85 S.W.(2d) 943; Huling v. Moore (Tex.Civ.App.) 194 S.W. 188 (writ ref.).

The record in this case discloses that the appellant failed to plead or prove that the appellees herein were not bona fide purchasers for value. The fact that Joseph Green was living upon the land when the judgment was taken against him in the tax suit, and that he was residing thereon when the land was in due course of law sold to the Allday Supply Company, carried no notice, actual or constructive, to the purchaser that the appellant had an interest in the land, or that his mother had such in her lifetime.

The appellant presents no contention in this court that his possession·in 1928 was sufficient to give actual notice to the purchaser at the execution sale that he claimed any equitable title or interest in the land. In fact, he makes no contention that he was in possession of the land in 1934 when the Supply Company made the lease to Rowe, nor does he make any contention that he was in possession of the land January 8, 1935, when Rowe assigned the lease to the Arkansas-Louisiana Gas Company. He did not allege in his amended pleadings upon which he went to trial that the Gas Company had actual notice of his alleged claim, and the fact that Joseph Green was residing on the premises as a tenant of the Allday Supply Company was not sufficient to charge the Gas Company with the notice of appellant's equitable title. It is nowhere contended that Joseph Green in 1934 and 1935, or at any other time, was the tenant of appellant Love, and holding the land or any part thereof under him.

The evidence establishes nothing in favor of the appellant by way of notice based upon possession. In Strong v. Strong (Tex.Com.App.) 98 S.W.(2d) 346, it is held that the character of possession by owners of equitable title to realty, constituting constructive notice of their rights to purchaser of minerals from owner of legal title to realty, must consist of open, visible, and unequivocal acts of occupancy in their nature referable to exclusive dominion over realty. From the viewpoint of appellant there is no testimony establishing such circumstances. See, also, Maxfield v. Pure Oil Co. (Tex.Civ.App.) 91 S.W.(2d) 892; 43 Tex.Jur. § 390, p. 661. Apparently no point is made that the consideration paid at the execution sale was grossly inadequate. If raised, the contention cannot be sustained under the facts and authorities. Articles 7328 (as amended) 7330, R.S.1925.

As against any contention made by the appellant, the R. S. Allday Supply Company, purchaser at the tax sale, O. J. Rowe, purchaser of the mineral lease from the Supply Company, and the Gas Company, which purchased the lease from Rowe, were each, in turn, bona fide purchasers of the property for value and without notice of the appellant's alleged equitable title. Such being. the nature of the transaction by which the Supply Company originally purchased and became the owner of the land, the bona fides of that transaction conclusively establish the rights asserted by the Gas Company.

To establish his right to recover the land, the appellant cites, among other authorities, the opinion in State Mortgage Corporation v. Ludwig, 121 Tex. 268, 48 S.W.(2d) 950, 952. Many of the pertinent facts of that case are similar to those in the instant one. The litigants in asserting the equitable title were permitted to recover, but the case is not in point here and is easily

distinguishable from this one. In that opinion the Supreme Court said: "Nor can the case present any question of bona fide purchaser with the deceased spouse's children sharing actual possession of the property."

If the appellant in the instant case had remained in actual possession all the time, a different case would be presented and the Ludwig Case would be in point. The appellant's theory of the case does not appear to take into consideration the element of bona fide purchaser in such cases. The authorities cited in this opinion lay down the rules of law to be applied to the facts of this character of case.

■ Viewing the record from all angles, and the testimony in the light most favorable to the appellant, we conclude that the appellees were not shown to have notice, actual or constructive, of the appellant's claim, and that the trial court did not err in giving the instructed verdict.

The judgment of the trial court is affirmed.