RICKER, LEE & CO. v. M. D. COLLINS.

No. 6850.

1. **Error Bond.**—Judgment for costs against plaintiff and his surety on cost bond in favor of one of two defendants. The defendant prosecuted error to Supreme Court. Its bond was made payable to the plaintiff and not including in its obligees the surety in the cost bond against whom the judgment had been rendered. *Held*, upon motion the case was properly dismissed on account of defective error bond.

2. **Laches—Waiver.**—At the same term of such dismissal a motion was urged to reinstate the case, both defendants consenting but the plaintiff below resisting; the

court reinstated the case. These proceedings were had at Austin term, 1889. The case was continued at that time, and again it was continued at the term of 1890. On April 8, 1891, the case was referred to the Commission of Appeals. April 15 the plaintiff renewed his motion to dismiss upon the same grounds as in his original motion. *Held,* that it was his duty to present the matter to the next ensuing term; the delay is ground for refusal.

3.   Same — Jurisdiction. — After such delay the defect in the error bond did not affect the jurisdiction over the case on error.

4.   Fact Case—Contract—Waiver.—Suit by a subcontractor for difference in cost of excavations made by him between *solid rock* and *loose rock,* against the contractors. The classification of the work was to be determined by the engineer of the employer, a railway company. The questions—of classification as hard rock by the engineer, of fact whether hard or loose rock, and of acceptance of payment and consequent waiver— were made in the testimony. There was sufficient evidence to support the classification insisted upon by the plaintiff, and a judgment in his favor for the sum sued for.

ERROR from Lamar.   Tried below before Hon. E. D. McClellan. The opinion states the case.

*Maxey, Lightfoot & Denton,* for motion to dismiss, cited Chambers v. Fisk, 9 Texas, 261; Greenwade v. Smith, 57 Texas, 195; Young v. Russell, 60 Texas, 684; Harvey v. Cummings, 62 Texas, 186; Thompson v. Pine, 55 Texas, 427.

*James B. & Charles J. Stubbs,* for plaintiffs in error.

*Maxey, Lightfoot & Denton,* for defendant in error.

COLLARD, JUDGE, *Section A.*—We will first dispose of the motion by Collins, defendant in error, filed in the Commission of Appeals at Austin, April 15, 1891.

Ricker, Lee & Co. were contractors to build for the Gulf, Colorado & Santa Fe Railway Company a part of its road, and Collins was a subcontractor to make for them certain excavations. There was a dispute after the work was done about the classification of a part of it, Collins claiming that it was solid rock, and Ricker, Lee & Co. claiming that it was loose rock. The excavation of solid rock was to be paid for at 75 cents per cubic yard, and loose rock at 25 cents per cubic yard. Collins brought suit against Ricker, Lee & Co. for the difference in the price not paid, as a balance due on his account, making the railway company a party defendant, giving a cost bond. Collins recovered judgment April 13, 1888, against Ricker, Lee & Co. as claimed for $2456.74. He recovered nothing against the railway company, and was adjudged with his sureties to pay its costs. Ricker, Lee & Co. recovered by the judgment over against the railway company the same amount, $2456.74. The railway company appealed, and Ricker, Lee

& Co. have brought the case to the Supreme Court by writ of error, each by separate transcripts.

The petition for writ of error failed to make the sureties on Collins' cost bond parties defendant, and the writ of error bond was made payable to Collins alone. Because of these omissions, Collins on April 2, 1889, filed a motion to dismiss the writ, and on April 9, 1889, it was accordingly dismissed. On the 23d of the same month, the railway company having voluntarily appeared in the Supreme Court and waived all irregularities, and joining with Ricker, Lee & Co. in a motion to set aside the dismissal and reinstate the case, it was so ordered, and the cause was submitted on briefs for both parties. This was all done at the Austin term, 1889, and the case was continued. It was again continued at the Austin term, 1890, and on April 8, 1891, it was referred to the Commission of Appeals, in which court the motion now under consideration by Collins was filed April 15, 1891, to set aside the submission and dismiss the cause.

The motion is based on the grounds set up in the original motion, ·and because the case was reinstated by agreement only of the plaintiff ·in error and the railway company, the defendant Collins objecting; be- ·cause while the plaintiff in error and the railway company could by agreement reinstate the case as between themselves, yet they could not do so as to Collins; because the court had no jurisdiction on account of the insufficiency of the writ of error bond made payable only to Collins, and that the mutual agreement of the parties could not confer jurisdiction; and because the citation in error did not cite all the parties to the judgment, making them defendants in error so as to give the court jurisdiction.

We think the motion to dismiss comes too late. Supreme Court Rules 8 and 9. The defendant in error had notice of the motion to reinstate the cause; he made no complaint of the action of the court until nearly two years thereafter. It was his duty to present the matters now set up at least to the next succeeding term, but instead of this he suffered the case to be continued at two terms thereafter and transferred to the Commission before he asked the court to rescind its order. It was over three years after the judgment of the lower court to the time this motion was filed, when the period had expired within which writ of error was required to be sued out. This alone would be a sufficient reason for refusing the motion.

The defects in the bond pointed out and the failure to make all parties below defendants in the writ, would not now be held to be jurisdictional facts, at least in this case. If the court had no jurisdiction of the cause as it stood after the railway company had appeared and waived all questions as to the bond, service of citation, etc., no motion was necessary to invoke a ruling to that effect; the court would of its own motion have dismissed the cause. Young v. Russell, 60 Texas,

684. The court had acted on the original motion and dismissed, and after a voluntary appearance of the railway company reinstated the cause, thus indicating the opinion that no jurisdictional question was involved, and that consent and waiver as made would confer jurisdiction. We think these same questions can not at so late a period be raised again, and that the order reinstating the case should stand.

We have now to consider the main case as presented by the plaintiff in error. The principal ground relied on for a reversal is as follows:

"The court erred in refusing to set aside the verdict of the jury, because the contract provided that plaintiff should do the work according to specifications, and in conformity to the plans and directions and to the satisfaction and acceptance of the chief engineer of the defendant company, or such engineer as he might designate, and the proof shows without conflict that it was accepted at 40 per cent solid rock and 60 per cent loose rock, and there was no evidence tending to show in the remotest degree that the engineer was guilty of fraud, misconduct, or such gross mistake as would imply bad faith or a failure to exercise an honest judgment. In the absence of these his determination was final under the contract. The evidence further shows that it was paid for under the said classification of the company's engineer, and that the claim that a classification was made before the work was commenced which would impose a greater liability upon defendants was not sustained by the testimony."

Under appropriate issues made in the pleadings the plaintiff below proved a contract between him and defendants Ricker, Lee & Co., who were the general contractors of the railway company, by which he was to do certain excavating on section 39 of the road on the Dallas and Paris extension, for which Ricker, Lee & Co. were to pay him for loose rock 25 cents per cubic yard, and 75 cents for solid rock; that he did the work according to contract, and they had paid him for all the work except $2228 and interest, which was past due. There is no controversy about the quantity of material excavated by plaintiff under the contract, but the controversy is about 7425 cubic yards of material taken out of the cut; plaintiff claiming that it was solid rock and was so classified by the engineer in charge of the work, and having authority to make the classification, and defendants claiming that only 40 per cent of it was solid rock and 60 per cent loose rock, on which basis plaintiff had been paid and had settled. Plaintiff denied that he had accepted such classification or settled by it, but declared that it was fraudulent, etc.

We see nothing more than a conflict in the testimony upon the issues raised. Ricker, Lee & Co. set up that the contract was written, and that it prescribed the method of classifying the work, and that it was to be done by the chief engineer of the railway company or some person designated by him. One Sherman was the chief engineer of

the company, Bradburn its division engineer including this work, and J. B. Hill was the engineer in charge of the work.

Plaintiff testified that he went on the "cut" with his teams, wagons, blacksmith shop and tools, seventeen double teams, scrapers, blasting and drilling implements, and a full camping outfit; that he "stripped". the earth off down to what he called solid rock, when he requested Hill to classify it, and refused to go on with the work until such classification had been made, declaring that he would.not do the work if it was not classified as solid rock. Hill, it seems, then hesitated about it, and plaintiff ordered.his son (who was his foreman) to move the outfit off. This was about noon, and after dinner Hill took another look at the work, classified it as solid rock, and so reported it, and then plaintiff (testifies) that he proceeded with the work,. and none of the engineers gave him notice of any dissatisfaction with the work or its classification until about its completion, when Mr. Sherman came up to the camp of Mr. Owens (one of the firm of Ricker, Lee & Co.) and was complaining about the work along the line. Plaintiff says that when he first heard that Hill denied that he·had classified the work as solid rock he went down to see Mr. Owens about it (the work was then about completed) and found Hill there; he charged Hill with lying if he said he had not classified the work as solid rock, and Hill did not deny it. He further testified that some one of the engineers of the railway company and some member of the firm of Ricker, Lee & Co. were on the ground all the time the work was progressing, and they (Ricker, Lee & Co.) knew of the classification made by Hill at the time it was made and during the time the work progressed; that Owens was away at the time of the classification but returned in a day or two, and they told him all about it, and he expressed himself as satisfied. He further testified that he was paid for all his work except the amount sued for, and when the bookkeeper for Ricker, Lee & Co. made him the last payment, the estimates being all made up in which this work was not classified as solid rock, he says: "I told him I would not receive and receipt for money for the work at anything less than solid rock, and he replied that he only wanted me to receipt him for the money he paid me and would not claim it as a final receipt; that the railway company had refused to allow Ricker, Lee & Co. solid rock for it, and he knew nothing of the matter himself, and would pay out what money was sent him." He also says that he had had other contracts with Ricker, Lee & Co. in writing, but the one for this work was verbal, but the work was to be done in conformity with the railway company's specifications and was so done.

Plaintiff's son (Mike Collins) corroborates his father as to the classification made by Hill upon the refusal of plaintiff to proceed with the work, and says that when Hill took a second look at the "cut" and got.to the center of it he said that "if he had seen this part of the cut

at first there would have been no trouble about it," and then instructed witness not to move the outfit off, as "everything would be all right."

Bradburn, division engineer for the company, testified, that he was immediately in charge of the work on the extension of the road to Paris and Hill was personally in charge of the work done by Collins on section 39, and that before the "cut" was opened up Hill classified it as solid rock and reported to witness by letter as follows: "I have classified Collins' cut as solid rock.   It is hard to my satisfaction."

Owens, one of the firm of Ricker, Lee & Co., corroborated Collins as to the latter coming to his tent about the time the work was completed, and then charging Hill with falsehood if he denied that he had classified the work as solid rock.   He also testified that Hill was the engineer of the railway company, appointed by the chief engineer of the railway company to classify the work and to supervise the same. . The witness was in Galveston, and while there heard of the threat of Collins to take his teams and hands off the work, and he returned in a short time, but never heard that Hill had classified the work solid rock.

Davis, bookkeeper for Ricker, Lee & Co., testified as to the account of the firm with plaintiff, on which 4456 cubic yards of the work were marked as loose rock at 25 cents; that plaintiff, at the time he paid the last payment to him, claimed it was solid rock, and insisted that it had been so classified by the engineer in charge.   "I told him I knew nothing of the matter and could only pay him 25 cents per cubic yard, according to classification sent to me by the engineer, and that I would only ask him to receipt me for the actual money paid him, which he did, and told me at the time that he would insist on pay for the full amount claimed by him for this work."

Besides plaintiff and his son, Hugo Liberman and T. D. Watson testified that the work fairly classified would be solid rock.

Bradburn testified that Sherman never made any classification of the work; that he himself made all final estimates and employed Lancaster and J. B. Hill to classify the work, and they returned it as loose rock.   This was after the work was completed, and he on account of the extreme height of the cut and the difficulty in taking out the material, allowed it as 40 per cent solid rock and 60 per cent loose rock, but that Lancaster and Hill had classified it as loose rock according to specifications in the contract, and he did this with the consent of Chief Engineer Sherman.

It was in proof that all the material was moved by plows and scrapers after it had been blasted with powder and dynamite.   Bradburn says some of it was soft, but that was owing to the quality of powder used by Collins in blasting; he considered a greater part of the material neither loose nor solid rock, but joint clay or soapstone, for which the company had no classification.   He also testified that all work done by a contractor was subject to estimates of the engineer in charge, and

Ricker, Lee & Co. in settlements are governed by final estimates returned by the engineer in charge.

Hill testified that he wrote the letter to Bradburn, before mentioned, to bring him on the ground so that he could settle the dispute, and it was not done with the intention to classify the cut as solid rock; that it was not solid rock; that he told Collins he had no power to classify the work; that Collins then asked him to telegraph Bradburn to come and classify it, and that he did not do this, but told Collins he would write, and so with the intention to bring Bradburn on the ground he wrote the letter. He says he and Lancaster were appointed to measure the work, and they decided it was 40 per cent solid rock and the rest loose rock; that they did not think at the time anything would be allowed but as loose rock, and they were very liberal with plaintiff. He says, "I did return the same to the company as loose rock under the instructions of Bradburn." He testified that he told plaintiff that if he classified as solid rock his decision would not be binding (referring to the alleged classifying before the "cut" was opened). He says a great deal of the material was taken out with scrapers, and it seemed to get soft at the bottom, somewhat like soapstone.

Other witnesses besides Bradburn testified that the material was taken out with plows and scrapers after it had been blasted.

We have now detailed enough of the testimony pertinent to the issues to give us a proper understanding of the assignment of error. It will be seen that plaintiff's claim rests upon the first classification made by Hill, while the defendants ignore it altogether or deny that it was ever made. The evidence in our opinion amply sustains the plaintiff, that Hill was authorized to classify the work, and that he did so as alleged by plaintiff. This classification met the terms of the contract and was binding upon the defendants Ricker, Lee & Co. With a knowledge of it, and permitting plaintiff without objection to proceed with the work until it was completed or about completed, they could not be heard to set up a classification more onerous to plaintiff, made after the work was completed, without his consent. Myer v. Fruise (16 S. W. Rep., No. 13), decided at Austin May 26, 1891, by Commission of Appeals. We do not find anything in the contract stipulating when the classification shall be made, at least nothing inhibiting it before the work is completed.

The following is a provision of the contract made with Collins with reference to the same kind of work he was to do on other sections of the road, which Owens (one of the firm of Ricker, Lee & Co.) testifies is exactly like the one sued on, except as to the number of sections: Collins binds himself to do and complete the work by a certain time "according to the specifications and in conformity with the plans and directions and to the satisfaction and acceptance of the chief engineer of the Gulf, Colorado & Santa Fe Railway, who is referred to in this

agreement as engineer, or such engineer as he may designate." Then in the contract follow the prices to be paid for the work, "payments to be made on the estimates of the engineer as hereinafter provided, but the amount hereinafter retained as a percentage on the work is never to be paid to the contractor if he do not complete the work in the time and manner agreed upon." It is then provided, "that the 10 per cent retained from the above monthly estimates shall in no case be considered due or payable to said contractor until the work herein contracted for is fully completed in accordance with this agreement." The contract is further silent as to monthly estimates, or how estimates are to be made, and nothing more is said about them. The contract is evidently in this respect made up of extracts from some other more complete instrument, probably from the contract of Ricker, Lee & Co. with the railway company, which is very lengthy. The time estimates to be made for work done would include the quantity but not necessarily the classification of the work, if that had been done before, nor is it indicated that the work may not be classified beforehand. Evidently it was not intended that estimates should be delayed until the work was all completed.

It follows from the foregoing that there is nothing in the contract to show that the classification by Hill was premature, save the mere fact that he could make it with more exactness and certainty after the work was done. He was appointed to do it and did determine the question before the work was done, and we do not think he could, nor could the chief engineer, make another classification more onerous to plaintiff after he had performed the contract without perpetrating a fraud upon him. There is no evidence tending to show that this classification was abandoned with the consent of plaintiff, or that he agreed to any other; on the contrary, the evidence is undisputed that he did not consent to the last classification made by Hill and Lancaster, or by Bradburn with the approval of Sherman. There is not the slightest evidence that he settled with Ricker, Lee & Co. upon the basis of the last classification. He was allowed by the bookkeeper of Ricker, Lee & Co. to receipt for the last amount paid him as a credit on the amount he claimed, declaring at the time that he would insist upon payment for the work as solid rock. Ricker, Lee & Co. could not, by accepting the last report of the engineers, and so settling with the railway company without plaintiff's consent, affect his rights. They were bound to him, and the railway company was bound to them. They might settle with the railway company as they saw fit, but in so doing they could not acquit themselves of their obligations to him.

We conclude that the evidence sustained the verdict, and that the judgment of the lower court should be affirmed.

*Affirmed.*

Adopted October 20, 1891.