STATE MORTGAGE CORPORATION V. MILTON LUDWIG ET AL.

No. 5973. Decided April 6, 1932.
(48 S. W., 2d Series, 950.)

*Thompson, Dilworth & Marshall, Fred Russi* and *N. W. Parmer,* all of San Antonio, for plaintiff in error.

Since Albert Ludwig was the community survivor as to the community estate of himself and Annie Ludwig, deceased, and also had full power and authority to manage and control the community estate of himself and his second wife, Willie Ludwig, who was then living, the tax suit number A-22,501, wherein Albert Ludwig was personally served with citation, and made default, was binding not only upon the said Albert Ludwig, but was also binding on the community estate of Albert Ludwig and his deceased wife, Annie Ludwig, and the children of the said Albert Ludwig and Annie Ludwig, but was also binding upon Willie Ludwig, who was then living, and the two minor children of the said Albert Ludwig and Willie Ludwig, namely, Dorothy Alberta Ludwig and Wanda Frances Ludwig, who were then minors. Carter and Rust v. Conner, 60 Texas, 52; Oliver v. Bordner, 145 S. W., 656; Henry v. McNew, 69 S. W., 213; Henry v. Vaughan, 103 S. W., 192.

The judgment in the tax suit number A-22,501 was not void because the property involved in said suit was foreclosed and sold under such foreclosure in bulk. Ryon v. Davis, 75 S. W., 59; Masterson v. State, 42 S. W., 1003; Allen et al. v. State Mortgage Corporation, 19 S. W. (2d) 109.

The court erred in rendering judgment for the plaintiffs and intervenors and against the defendant, because the plaintiffs' and intervenors' pleadings show upon their face that their causes of action were barred by the four year statute of limitations. Levy v. Roper et al., 113 Texas, 356, 256 S. W., 251; Switzer v. Smith, 300 S. W., 31; State v. Dashiell, 74 S. W., 779; Dunn v. Taylor, 94 S. W., 347; Treadway v. Eastburn, 57 Texas, 209.

*Marcus W. Davis, Church & Gaves* and *Merritt Steger,* all of San Antonio, for defendants in error.

Where persons are in actual possession of property inherited from their ancestor, the state, in a tax suit, has constructive notice of their claim of title to such property and they are not bound by the tax judgment if not made parties to the suit, it further being the law that courts in the foreclosure of tax liens and the sale of lands for taxes in pursuance

thereof can exercise only special and restricted jurisdiction. Scales v. Wren, 103 Texas, 304, 127 S. W., 164; Ramirez et al. v. Smith, 94 Texas, 164, 59 S. W., 258; Skov v. Coffin, 137 S. W., 455, in which case a writ of error was refused; Moore v. Miller, 155 S. W., 577, in which case a writ of error was refused; Carver v. Moore, 288 S. W., 156; First Natl. Bank v. Roller, 14 S. W. (2d) 835, by Commission of Appeals; and Myers v. Frey, 102 Texas, 529, 119 S. W., 1142; State Mort. Co. v. Magee, 27 S. W. (2d) 864; Hollywood v. Wellhausen, 68 S. W., 329; Ball v. Carroll, 92 S. W., 1023.

Since defendants in error sued, among other things, to remove a continuing cloud from their title to the land in controversy, the injury from said cloud was a continuing cause of action, and the cause of action for the removal of the cloud from the title was likewise continuing, and never barred by limitation while the cloud exists. Texas Company v. Davis, 113 Texas, 321, 254 S. W., 304; Luker v. Anderson, 10 S. W. (2d) 150.

The tax sale is void and that State Mortgage Corporation acquired no better title than the purchaser at the tax sale. Carter and Rust v. Conner, 60 Texas, 52; Underwood v. Pigman, 32 S. W. (2d) 1102; State Mort. Corp. v. Traylor, 120 Texas, 148, 36 S. W. (2d) 440; Oliver v. Bordner, 145 S. W., 656; Henry v. Vaughan, 103 S. W., 192; Henry v. McNew, 69 S. W., 213.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Under the amended pleadings on which this case was tried, it was an action by defendants in error, Milton Ludwig, Edna Scott, and Josie Weilbacher, joined by her husband, Emil Weilbacher, as plaintiffs, and by defendants in error, Mrs. Willie Ludwig and Dorothy Alberta Ludwig and Wanda Frances Ludwig, minors, such minors suing by Mrs. Willie Ludwig as next friend, as intervenors, against plaintiffs in error, State Mortgage Corporation and its agent, for the removal of a cloud from the title of defendants in error to lot 88, in city block 167 of the City of San Antonio, Texas, and lot 6, in block 3, in city block 1965 of said city.

The amended pleadings of defendants in error averred:

First. That on May 8, 1870, F. Joseph Ludwig acquired title to said lot 88.

Second. That lot 88 was community property of F. Joseph Ludwig and his wife, Sophia Wilhelmina Ludwig. That upon

the death of F. Joseph Ludwig, on March 14, 1900, and of Sophia Wilhelmina Ludwig, in January, 1905, the title to lot 88 passed to the nine children of F. Joseph Ludwig and Sophia Wilhelmina Ludwig, namely: Albert, Francis William, Wilhelmina, Maria Johanna, Emma Catherina, Catherina Christina, Amanda Sophia, Felix Joseph, and Emilia Louisa, each of said children acquiring an undivided one-ninth of said lot 88.

Third. That on March 31, 1886, Albert Ludwig married his first wife, Annie Ludwig, and that by purchase during said marriage the said Albert Ludwig acquired the eight-ninths interest in lot 88 inherited by his brothers and sisters, thus owning as his separate property one-ninth of lot 88 and he and Annie Ludwig owning as community property the remaining eight-ninths of said lot.

Fourth. That Annie Ludwig died on December 12, 1912. Thereupon the title to her one-half of eight-ninths, being four-ninths of lot 88, passed to her children, viz: defendants in error Milton Ludwig, Edna Scott, and Josie Weilbacher.

Fifth. That on April 9, 1907, Albert Ludwig acquired the title to said lot 6 as part of the community estate of himself and his first wife, Annie Ludwig, and that defendants in error Milton Ludwig, Edna Scott and Josie Weilbacher own by inheritance from Annie Ludwig one-half of lot 6.

Sixth. That on January 19, 1914, Albert Ludwig married his second wife, the defendant in error Willie J. Ludwig. That Albert Ludwig died intestate on April 7, 1926, leaving surviving him as his heirs at law his second wife, Willie J. Ludwig, and the following named children, to-wit: defendants in error Milton Ludwig, Edna Scott, Josie Weilbacher, Dorothy A. Ludwig, and Wanda F. Ludwig.

Seventh. That on November 18, 1921, the State of Texas sued Albert Ludwig, called Albert L. Ludwig, in the same court in which defendants in error sued, for $70.74 taxes for the year 1920, by petition averring that said amount of taxes was secured by a lien on "lot 88 C B 167; lot 6, block 3, C B 1965, en solido," without itemization of the taxes due respectively on each of said lots. That the lots were assessed for taxation in the name of Albert L. Ludwig, and were separate and distinct lots and not parts of the same block or subdivision.

Eighth. That on March 31, 1923, judgment by default was entered on the minutes of the court, reciting that the defendant Albert L. Ludwig is indebted to the State of Texas for taxes due it for 1920 in the sum of $64.49, and for the further sum of $19.90 for interest, penalty, and costs, aggregating $84.39,

due on lot 88, C B 167; lot 6, block 3, C B 1965, lying and being in the County of Bexar, State of Texas, and within the corporate limits of the City of San Antonio, with interest on $64.49 at six per cent. per annum from date of the judgment, with foreclosure for tax lien on said lots, without stating the amount due on each lot.

Ninth. That no one was a party to the tax foreclosure proceedings save the State and Albert L. Ludwig.

Tenth. That on May 1, 1923, the clerk issued an order of sale upon said judgment, reciting that it was for the sum of $64.49 taxes and $19.90 interest, penalty, and costs, aggregating $84.39, together with interest on $64.49 from date of the judgment at the rate of six per cent. per annum, and that the same was a foreclosure of liens for taxes, interest, penalty, and costs due the State of Texas and the County of Bexar upon "lot 88, C B 167, lot 6, blk. 3, C. B. 1965."

Eleventh. That the sheriff in giving notice of the sale of the lots followed the same indefinite description as was given in the order of sale.

Twelfth. That Clay Tallman became the purchaser at the sheriff's sale, and return was made by the sheriff of the sale to him of said lots for $94.98, and that plaintiffs in error claim the property through and under the sheriff's sale and deed to Clay Tallman, and have no other claim of title.

Thirteenth. That said lot 88 at the date of the tax sale and since was worth $10,000 on the market, and said lot 6 was at said times of the market value of $1,100; and that the foreclosure proceedings were void as to defendants in error under the facts plead by them.

Fourteenth. That at all times since the filing of the tax suit Albert Ludwig and defendants in error were in actual, continuous and adverse possession of the lots, said lots having been in the possession of Albert Ludwig and defendants in error until Ludwig's death, and thereafter in the possession of defendants in error.

Fifteenth. That plaintiff in error State Mortgage Corporation, as an assignee of Clay Tallman, applied on June 2, 1927, for a writ of possession, in order that it might be placed in possession of the lots in controversy. Defendants in error immediately thereafter filed this suit.

Sixteenth. That defendants in error tendered to plaintiff in error in their pleadings and on the trial double the amount paid by Clay Tallman as purchaser at the tax sale, plus in-

terest from the date of the tax sale at ten per cent. per annum, which tender was refused.

Defendants in error prayed that the claim of plaintiff in error be removed as a cloud from their title, and that they have judgment for the title to the lots, and for possession of same.

Plaintiff in error filed general and special exceptions to the pleadings of defendants in error, and also filed pleas of general denial and of limitations of four years, and they specially plead that the tax judgment barred defendants in error from any such relief as that which they sought.

The district court filed conclusions of fact, to the effect that every averment of the pleadings of defendants in error, as above set out, was established by the evidence, and filed conclusions of law holding that defendants in error being strangers to the tax judgment and foreclosures were not bound thereby, and that the tax proceedings invoked the court's exercise of "only special and limited jurisdiction" and were null and void and subject to collateral attack. The district court entered a decree annulling the tax deed and the claim of plaintiff in error under same as a cloud on the title of defendants in error, which was affirmed by the Honorable Court of Civil Appeals. 35 S. W. (2d) 267, 268.

No real question can be raised under the trial court's findings with respect to the superior title of the defendants in error Milton Ludwig, Edna Scott and Josie Weilbacher to an undivided four-ninths of lot 88 and to an undivided one-half of lot 6. Annie Ludwig, during her lifetime was the owner of such interests. Upon her death, such interests descended to and vested in her children, subject to the homestead rights of Albert Ludwig, which necessarily terminated at his death. Arnold v. Leonard, 114 Texas, 535, 273 S. W., 799; Hopkins v. Bacon, 282 U. S., 122, 51 Sup. Ct. Rep., 62, 75 L. Ed., 249; article 2578, R. S.; Chamberlain v. Leland, 94 Texas, 502, 62 S. W., 740. The judgment foreclosing a lien for taxes arising after Annie Ludwig's death in a suit against Albert Ludwig alone could bind no interest of the heirs of Annie Ludwig. In the words of Mr. Justice Stayton: "It would seem to be a rule of universal application that the right of no one should be concluded by a judgment rendered in a suit to which he was not a party." Read v. Allen, 58 Texas, 382. We have no question for decision as to the effect on the interests of the heirs of a deceased spouse of a foreclosure on community property against the survivor of the community for a community debt. Nor can the case present any question of bona fide purchaser with the

deceased spouse's children sharing actual possession of the property. The tax sale was plainly utterly ineffective with regard to the four-ninths of lot 88 and one-half of lot 6, owned and possessed by defendants in error Milton Ludwig, Edna Scott, and Josie Weilbacher.

A different question is presented as to the interests claimed by defendants in error by descent from Albert Ludwig at a date subsequent to the sale under the judgment foreclosing the alleged tax lien. In order to determine the questions raised relative to such interests we must ascertain the effect of the tax foreclosure proceedings on the title of Albert Ludwig.

■ The Supreme Court has definitely rejected the view that a district court in foreclosing a tax lien on land is exercising a special and limited jurisdiction as held in this case by both courts below. In Brown v. Bonougli, 111 Texas, 275, 232 S. W., 490, the court determined that decrees of the district court entered in suits to foreclose tax liens are supported by all the presumptions which uphold judgments of domestic courts of general jurisdiction. In that case the Court declared: "A sale, ordered by a court of record, after its jurisdiction has attached over the property and owner, to satisfy an established debt and lien, is not administrative; and the indispensable judgment, on formal pleadings, after due notice, prevents the procedure from being harsh, ex parte, or summary." Referring to the statutes governing judicial foreclosures in tax cases, which were held free from constitutional infirmity, the Court continued: "The owner is here afforded full opportunity to defend an unfounded claim for taxes.. After the claim is reduced to judgment, the owner has the same opportunities to prevent the sacrifice of his property as in other judicial foreclosures and sales. It seems to us not to admit of reasonable doubt that the validity of the sale under judicial foreclosure of a tax lien is to be determined by the rules governing judicial sales, and not sales purely statutory and summary. * * * If it were permissible or necessary to look beyond the plain language of the statute, it would seem manifest that it was the intent of the Legislature to remedy the evils, which had been inseparable from the future attempts to collect taxes through summary sales of land, by authorizing their collection through judicial sales. The evils of the method of summary sales were: First, disregard of the owner's property rights in dispensing with notice and an opportunity to be heard; and, second, inability of the government to compel payment of that to which it was lawfully entitled. The second evil was the natural out-

growth of the first. Taxes could not be collected, save to a small extent, by sales which passed nothing. The nullity of the sales resulted from the practical impossibility of proving punctilious compliance with each and every legal requirement. Yet in no other manner than by exacting proof of such compliance could the owner's rights and title be protected from unjust invasion. The remedy was to throw around the owner's rights and title every safeguard furnished by due and orderly judicial procedure, and to put the tax sale, in consummation of a valid judicial foreclosure, on the same plane, with respect to collateral attack, as other execution sales." So, the question now before us is what effect should be given to the judgment rendered in the exercise of the general jurisdiction of the district court and the sale thereunder, as against Albert Ludwig and his heirs?

■ The Supreme Court has often repeated its adherence to the rule governing collateral attack of judgments enunciated in Murchison v. White, 54 Texas, 82, that "the only contingency in which the judgment of a domestic court of general jurisdiction, which has assumed to act in a case over which it might by law take jurisdiction to the subject matter and the person, can be questioned, is when the record shows *affirmatively* that its jurisdiction did not attach in the particular case."

5 ■ It is claimed that notwithstanding the subject matter of the foreclosure suit as well as the person of Albert Ludwig were brought within the court's jurisdiction, yet the record affirmatively shows that such jurisdiction did not attach in the tax suit because a foreclosure was decreed on two lots for the taxes on both of them instead of a foreclosure on each lot for the taxes on it alone. The fallacy in this claim lies in the fact that while defendants in error plead with much particularity the defects in the petition, citation, and judgment, which are claimed to render the foreclosure void, the pleadings entirely omit any denial that Albert Ludwig was sued for taxes on the two lots under his rendition of same for taxation as one tract. Indeed, their only averment on the subject to the manner in which the taxes were assessed and sought to be collected comes near being an averment of a bulk rendition of the lots for taxation by Albert Ludwig and of a suit based thereon. For defendants in error expressly aver that the entire property in controversy, consisting of two separate lots, "was assessed in the name of the said Albert Ludwig," and that the judgment, entered on Ludwig's default, recited that he was indebted for

a lump sum for 1920 taxes on the two lots, and decreed a foreclosure of the tax lien on the two lots. Certainly nothing further can be presumed, in determining whether the judgment in the tax case is utterly void, under the pleadings and findings of fact in this record, than that the district court foreclosed a lien for taxes on two lots, which Ludwig elected to render and value as one. Such a presumption is consistent with the record and does not destroy, but supports, the validity of the decree foreclosing the tax lien.

■ The Supreme Court most properly held in Richey v. Moor, 112 Texas, 493, 249 S. W., 172, that the owner or his assign, who had separately rendered and valued eight parcels of land for taxation, was entitled to compel the tax collector to accept, and issue a receipt for, the taxes on any one parcel, since the lien attached, under the present Constitution and laws, against each lot separately valued and assessed, for the amount of the taxes on that lot alone. The court has never held that the same rule applied where the owner elected to treat two parcels as one for taxation purposes.

After affirming that the Constitution of 1869 made taxes a charge "merely upon each separate tract for the tax assessed against it," the Court added:

"We are not to be understood, however, by anything which we now or heretofore said, as either holding or intimating that either lots or blocks in a town or city, or originally distinct and separte surveys or grants in the country, if listed and assessed by the owner, or with his knowledge and approbation, as a single tract or parcel of land, may not be subject to a lien for the aggregate tax thus assessed; or that two or more originally separate tracts or parcels of land, either in town or country, may not be so used and occupied by the owner as to warrant their assessment as a single tract. This is not the question presented for our determination by this record, and it will be time enough to consider it when we are called upon to do so." The State v. Baker, 49 Texas, 764.

After quoting the above portion of Mr. Justice Moore's opinion in the case of The State v. Baker, supra, the Dallas Court of Civil Appeals held:

"It would seem to be more in harmony with justice and sound reason that an assessment made in the manner requested or approved by the tax payer would be a valid assessment. There might be reasons which would render it more convenient and to the interest of the taxpayer to have it so assessed than to have the assessment made against the various parcels. At

any rate, the tax assessor assessed the property in the manner in which the taxpayer presented it to him for assessment, and we do not think that plaintiffs in error should now have the privilege of raising objection to the manner in which the taxes were assessed against the property. 1 Blackw. Tax Titles, sec. 279." Dallas Title & Trust Co. v. City of Oak Cliff, 27 S. W., 1039, 1040. To the same effect see Harris v. City of Houston, 52 S. W., 653.

■■ It suffices to dispose of the attack on the tax judgment before us as a nullity because a lien was enforced against two separate lots for taxes on their aggregate value, that there is nothing in the record of the tax suit nor even in the averments of defendants in error's pleadings to repel the presumption that the foreclosure followed a rendition by Albert Ludwig of both lots for taxation as one. We hold that the owner of lots, or of an interest therein, or his assigns, who is thus responsible for the taxing authorities treating two parcels as one will never be allowed to successfully attack, on that ground alone, the assessment, nor subsequent proceedings for the collection of the taxes. Any bar against Albert Ludwig is equally effective against rights derived by heirship from him.

■ The second ground relied on for holding the tax proceedings void is that the part of the judgment and foreclosure in the tax suit, which was for penalty, and perhaps for some other items, is wholly unsupported by pleadings. We recognize the rule in the Supreme Court of the United States that it is inconsistent with due process to render a judgment having no support in pleadings or notice to the defendant. Mr. Justice Brewer made an admirably condensed statement of the rule in saying: "But without multiplying authorities, the proposition suggested by those referred to, and which we affirm, is, * * * that when a complaint tenders one cause of action, and in that suit service on, or appearance of, the defendant is made, a subsequent judgment therein, rendered in the absence of the defendant, upon another and different cause of action than that stated in the complaint, is without binding force within the courts of the same State; and, of course, notwithstanding the constitutional provision heretofore quoted, has no better standing in the courts of another State." Reynolds v. Stockton, 140 U. S., 270, 271, 43 N. J. Eq. (16 Stew.), 214. Strong opinion applying the rule were delivered in Munday v. Vail, 34 N. J. L., 422, 423; Clapp v. McCabe, 155 N. Y., 533, 50 N. E., 274; Charles v. White, 214 Mo., 187, 112 S. W., 545, 21 L. R. A. (N. S.), 488,

489; Waldron v. Harvey, 54 W. Va., 608, 46 S. E., 603, 102 Am. St. Rep., 963; Sache v. Wallace and Gillette, 101 Minn., 169, 112 N. W., 386, 11 L. R. A. (N. S.), 808; Windsor v. McVeigh, 93 U. S., 282; Wagoner Natl. Bank v. Welch, 164 Fed., 816. As stated in Hurr v. Davis, 155 Minn., 459, 193 N. W., 943: "The foundation of the rule that judgments of a court of competent jurisdiction are attended with a presumption of absolute verity, is the fact that the parties have been properly brought into court and given an opportunity to be heard upon the matters determined. But the foundation falls and the rule of verity ceases when it affirmatively appears from the record that the judgment adjudicated and determined matters upon which the parties were not heard."

However, the facts of this case do not bring the tax judgment within the above rule. It is true that the portions of the judgment, save for taxes and costs of the foreclosure suit, were without support in the pleadings, but so much of the recovery and foreclosure as is for taxes and such costs is supported by regular pleadings. These facts bring the case within the principle underlying the decision of Cooksey v. Jordan, 104 Texas, 619, 143 S. W., 141, where, in refusing to hold a judgment void, it is said: "Here there is in effect a judgment uncondition and no manner contingent, for $150, and containing, in substance, a provision that in the event an appeal was prosecuted that Huggins should recover the additional sum of $100. This provision of the judgment was and is unauthorized in the manner attempted to be rendered. It does not, however, in our opinion, render invalid so much of the judgment as the court had authority, on the hearing of the case, to render." Again, it was held in Foote v. Sewall, 81 Texas, 662, 17 S. W., 378, that the fact that a portion of a judgment was an absolute nullity did not vitiate the remainder of the judgment which was lawful. In following the last mentioned decision, the Galveston Court of Civil Appeals said: "Because the court rendered a personal judgment against Barelli which was void did not affect the validity of so much of the judgment as adjudged the amount due the plaintiff, and directed the sale of the attached property to satisfy the same." Barelli v. Wagner, 7 Texas Civ. App., 557, 27 S. W., 19.

It is settled law in this State that a sale of land by trustee under deed of trust for the payment of a debt, of which part is void and part invalid, is not a nullity. Hemphill v. Watson, 60 Texas, 679; Groesbeeck v. Crow, 85 Texas, 200, 20 S. W., 49; Rosborough v. Picton, 43 S. W., 1033; Openshaw v. Dean, 125

S. W., 991. There is stronger reason for refusing to adjudge void a sale by a public officer under a regular judgment of the district court, of which part is valid and unsatisfied.

■ We have been unable to find in the facts plead or embodied in the findings of the trial judge any sufficient ground for adjudging the tax judgment and sale to be null and void. Defendants in error, seeking to avoid the tax sale, plead with much particularity various irregularities in the tax suit and sale and also plead that the lots in controversy brought a grossly inadequate price. But nowhere in the pleadings or in the findings is it made to appear that the irregularities induced or caused the lots to bring an inadequate price. We are therefore unable, under the present pleadings, to sustain the decree of the courts below avoiding the foreclosure sale because of both irregularities and inadequacy in the price for which the lots were sold, though both irregularities and gross inadequacy in the sale price of the lots were proven.

At this point the case is governed by the holding in Kaufman & Runge v. Morriss, 60 Texas, 121-125, that:

"Mere inadequacy of price is not in itself sufficient to warrant the interference of equity for the purpose of setting aside a sheriff's sale of property made to a bona fide purchaser. I Story's Eq., sec. 245; Rorer on Jud. Sales, sec. 854.

" 'But if in addition to such inadequacy there be any appearance of unfairness or any circumstance, accident or occurrence in relation to the sale of a character tending to cause such inadequacy, then the sale will be set aside.' Rorer on Jud. Sales, sec. 398.

"When the disproportion between the value of the property and the price for which it sold is enormous, but slight additional circumstances will justify the inference that the sale is fraudulent. Allen v. Stephanes, 18 Texas, 658. * * *

"What causes are sufficient for this purpose cannot well be reduced to any general rule, but they must be such. as were calculated to prevent the property from bringing its value, or something reasonably near what it should bring at public sale, *and which on the particular occasion have actually produced that effect.*" (Italics ours).

This holding has been too long and too often followed for the Court now to consider departing therefrom. Allen v. Pierson, 60 Texas, 604-607; McKennon v. McGown (Texas Sup.), 11 S. W., 532; Pearson v. Flanagan, 52 Texas, 279-281; Chamblee v. Tarbox, 27 Texas, 146, 147.

Defendants in error and their ancestor, having continued in actual possession of the lots, their suit was not barred by the four years statute of limitation. Texas Company v. Davis, 113 Texas, 321, 254 S. W., 304; Pannell v. Askew, 143 S. W., 365, 366; Luker v. Anderson, 10 S. W. (2d) 150; Reese v. Granau, 27 S. W. (2d) 593; Terry v. Baskin (Com. App.), 44 S. W. (2d) 929; 17 R. C. L., sec. 71, p. 715. As stated in Texas Company v. Davis, supra, the court deemed that justice was best subserved by adhering to and recognizing the rule that the owner of land in possession had a continually arising right to invoke the aid of equity to quiet his title by removing a cloud therefrom, and that hence limitation could not be successfully invoked to defeat such an action. The notes published in 29 L. R. A. (N. S.) at page 930 and in 42 Annotated Cases at pages 44 and 45, show that this doctrine prevails in most of our states. The rule has the virtue that the right of the owner in possession is the same whether he defends by virtue of his superior right or sues. It certainly attains an end to be favored in equity that one shall not profit by simply failing to assert through the courts a claim which, if promptly asserted, would have been doomed to defeat.

For the error of the courts below in quieting title in defendants in error to the entire property in controversy, the judgments of the District Court and of the Court of Civil Appeals are reversed and judgment is here rendered quieting title in defendants in error Milton Ludwig, Edna Scott and Josie Weilbacher to an undivided four-ninths of Lot 88 and to an undivided one-half of Lot 6, and this cause is remanded for a new trial in the District Court as to the remaining interests in the lots, between all parties, since the pleadings of defendants in error may be amended so as to authorize a determination of the right of defendants in error to avoid the foreclosure sale and to be quieted in their title to, and possession of, the interests in the lots which were derived from Albert Ludwig.