

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 15, 1950

Hon. Murray L. Harris
County Attorney
Wood County
Quitman, Texas

*overrules
O-6479
O-7159
where conflicts*

Attention: Hon. James Hartfield
Assistant County Attorney

Opinion No. V-1058.

Re: The validity of delinquent tax
foreclosure sales by a Con-
stable under the submitted
facts.

Dear Mr. Harris:

You request an opinion upon the questions presented in
your letter dated April 26, 1950. Your letter and comments clear-
ly state the problem, hence we quote it in full as follows:

"The Tax Collector of Wood County has request-
ed of this office an opinion as to the validity of proceed-
ings had in certain delinquent tax suit foreclosure sales
and subsequent resales, purportedly made under Art.
7345b, in order to determine whether he is legally author-
ized to issue judgment receipts evidencing discharge of
the State and County tax liens sought to be foreclosed in
the said suits.

"The facts are as follows:

"In 1939, the City of Mineola, Texas, and the Min-
eola Independent School District, as plaintiffs, filed some
seventeen suits seeking to foreclose tax liens upon real
estate located within the City of Mineola for delinquent
taxes for various years. The State of Texas and Wood
County, being impleaded, intervened and filed answers
asserting their liens on the said real estate for delin-
quent taxes due them for the years involved. On Novem-
ber 2, 1939, judgment was rendered in all of the suits in
favor of all of the taxing units, foreclosing their liens.
On April 6, 1940, orders of sale were issued in all of
said suits, and on May 1, 1940, such orders were execut-
ed by public sale at the courthouse in Quitman, Texas,

by the Constable of Precinct Two of Wood County, Texas. At these sales all of the property involved in the suits were struck off to the City of Mineola, one of the taxing suits concerned. Subsequently, on August 3rd, 1942, after expiration of more than six months after the redemption period, and after notice duly published, all of said property was sold at public outcry at the courthouse in Quitman, Texas, by the Constable of Precinct Two of Wood County, Texas, to various parties.

"The City of Mineola has recently presented to the Tax Collector a check representing the State's and the County's pro rata share of the sums realized from the above-mentioned final sales made by the Constable on August 3rd, 1943.

"We have carefully examined the records and files in these suits and find that the proceedings had were in compliance with the statutes applicable to tax suit sales as of the dates indicated, except the Constable, instead of the Sheriff, executed the foreclosure sales and the deeds to purchasers at such sales, and that the Constable rather than the Sheriff, made the sales at public outcry after the redemption period (as authorized in Sec. 9, Art. 7345b) and executed the deeds to the purchasers at those sales.

"We have concluded that the foreclosure sales by the Constable to the City of Mineola were valid under authority of Art. 7345b, Sec. 7 and Art. 7328. However, with no case directly in point, there remains a question inasmuch as Art. 7328, though providing for sales procedure 'as in other cases of foreclosure', makes reference to the 'Sheriff' implying him to be the proper officer and specifically provides that the 'Sheriff' execute the deed where property is bid off to the State. By implication Art. 7330, providing that the Sheriff or his successors shall execute deeds to purchasers of land sold for default in payment of taxes, casts doubt as to validity of tax foreclosure sale and deed executed by a Constable.

"The more serious question, however, is that of the validity of the sales by the Constable on August 3rd, 1943, more than six months after the redemption period, made at the instance of the City of Mineola, purportedly under authority of Sec. 9, Art. 7345b which specifically provides that the Sheriff make such sales. It appears to us that the holding of the Supreme Court in

Little vs. Dennis, 187 SW 2nd 76, stamps these latter sales by the Constable as void. Unless these sales can be considered to have been validated by amendment to Art. 7345b (Act 1947, 50th Leg., p. 1061, Ch. 454, Sec. 1), in our opinion the Tax Collector cannot legally issue judgment receipts covering delinquent taxes involved in these suits.

"Therefore, we respectfully submit the following questions in light of the above facts and request your opinion on them:

"1. Could the Constable legally execute the orders of sale in these tax foreclosure suits?

"2. Could a Constable legally make the sale authorized in Sec. 9, Art. 7345b, to be made at request of one of taxing units concerned after six months after redemption period?

"3. If either of the above described types of sales were invalid, were they subsequently confirmed and validated by amendment to Art. 7345b (Act 1947, 50th Leg., p. 1061, Ch. 454 Sec. 1), so that the Tax Collector can issue valid judgment receipts for State and County delinquent tax liens foreclosed in these suits?"

The first question, briefly restated, is: May the Constable legally execute the order of sale and give a valid deed to the purchaser at the first sale in a tax foreclosure suit. We think the answer to this question must be in the affirmative for the following reasons.

Section 7 of Article 7345b, supra, provides:

"In the case of foreclosure, an order of sale shall issue, and, except as herein otherwise provided, the land shall be sold thereunder as in other cases of foreclosure of tax liens."

Justice Greenwood, speaking for the Supreme Court, said in the case of State Mortgage Corporation v. Ludwig, 121 Tex. 268, 48 S.W.2d 950 (1932):

""It seems to us not to admit of reasonable doubt that the validity of the sale under judicial foreclosure of a tax lien is to be determined by the rules governing judicial sales, and not sales purely statutory and summary."

Chief Justice Leslie of the Eastland Court of Civil Appeals in the case of Love v. R. S. Allday Supply Co., 106 S.W.2d 830 (1937), in citing the case of State Mortgage Corporation v. Ludwig, supra, as authority upon the same point, said:

"Further, it must be borne in mind that tax foreclosure sales are governed by the same rules governing judicial sales generally. This is due to the statute and authorities construing same."

The Supreme Court has never departed from the law as laid down in the foregoing cases. Judge Taylor of the Commission of Appeals, in an opinion adopted by the Supreme Court in Gamble v. Banneyer, 137 Tex. 7, 151 S.W.2d 586 (1941), said:

"It is settled in this state that the 'decrees of the district court entered in suits to foreclose tax liens are supported by all the presumptions which uphold judgments of domestic courts of general jurisdiction * * *' and that the remedy is to throw around the owner's right and title 'every safeguard furnished by due and orderly judicial precedure,' and to put 'the tax sale, in consummation of a valid judicial foreclosure, on the same plane, with respect to collateral attack as other execution sales.' State Mtg. Corp. v. Ludwig, 121 Tex. 268, 48 S.W.2d 950, 952, 953."

Prior to the adoption of the present rules of civil procedure Article 2218, V.C.S., provided, in part, as follows:

"Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution, in satisfaction of the judgment; . . ."

This statute has been superseded by Rule 309 of the Rules of Practice and Procedure in Civil Actions adopted by the Supreme Court, which rule is in part as follows:

"Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians,

> that an order of sale shall issue to the sheriff <u>or any</u>
> <u>constable</u> of any county of the State of Texas, <u>directing</u>
> <u>him to seize</u> and sell the same as under execution, in
> satisfaction of the judgment; . . ."

Thus it is observed that the rule provides that the order of sale shall issue to the sheriff or any constable of any county of the State of Texas in lieu of the provision in the statutes which provided that an order of sale shall issue to the sheriff or any constable of the county where such property may be. The force of the statute and the rule are the same in so far as applicable to the problem here involved.

Concededly, in none of the cases we have cited above was there directly involved the question of the coordinate power of the sheriff and constable to execute an order of sale in a delinquent tax suit. But we perceive no reason why the principle of law stated in these cases would not be applicable to the questions here considered. We have found no case, either under foreclosure of liens generally, or tax liens, holding that a constable in executing writs of execution and making sales thereunder does not possess the same power and authority as the sheriff. The case of Little v. Dennis, 143 Tex. 582, 187 S.W.2d 76 (1945), which we shall presently discuss in connection with our answer to your second question, is not contrary in so far as first sales are concerned.

We believe the foregoing is sufficient to show that the constable has the same power as the sheriff in executing an order of sale and issuing a deed thereunder to the purchaser in tax foreclosures as to the first sale, and you are accordingly so advised.

Passing next to your second question which, briefly restated, is as follows: Has a constable authority to make a second sale and issue a deed to the purchaser at such sale for and on behalf of the taxing units purchasing at the first sale under the provisions of Section 9, Article 7345b. We think the answer to this question must be in the negative.

As to the sales made by taxing units after title has been perfected in them by operation of law arising from the expiration of the redemption period, a different situation prevails than that attending the first sale. Section 9 of Article 7345b, supra, does not purport further to deal with judicial sales, but prescribes the method, conditions, and manner of sales by the taxing units of property previously acquired by the taxing units at first sales which they then own and hold for the purpose of sale to collect the taxes owing to the various participating taxing units in the suit.

The judicial power had ceased and come to an end upon the final consummation of the first sale. Section 9 of Article 7345b

merely prescribed the conditions and method of sales made by the taxing units of property purchased at the prior judicial sale. Under the terms of this section of the statute, the power to make a public sale in behalf of the taxing units is expressly conferred upon the sheriff. Nowhere in said section of the statute is the constable mentioned or is there any inference that he may have coordinate power with the sheriff in making such sales. True, the statute says, "All sales contemplated herein shall be made in the manner prescribed for the sale of real estate under execution, except that they must be made between the hours of two o'clock p.m. and four o'clock p.m."; but this deals specifically with the manner of making the sale and does not warrant the inference that the constable would have the same power as the sheriff. Whatever may have prompted the Legislature to designate only the sheriff as the officer to make these sales, the Legislature undoubtedly had that power; and we are not warranted in adding by construction what the Legislature has omitted.

The case of Dennis v. Little, supra, is direct authority in support of the conclusion we have reached. Justice Sharp in that case said:

> "Whether such property is sold under the provisions of Article 7328 or under the provisions of Section 9 of Article 7345b, the sheriff is the only person authorized to execute a deed conveying such property to the purchaser thereof at such sale."

Section 9 of Article 7345b deals only with second sales.

You are, therefore, respectfully advised that the second sales made by the constable in behalf of the taxing units were unauthorized, and the purchasers acquired no title thereunder. But did the amendment to Section 9 of Article 7345b by the 50th Legislature (H.B. 695, Acts 50th Leg., p. 1061), to which we shall now turn in answer to your third question, have the effect of validating such titles?

Section 9 of Article 7345b was materially amended by the 50th Legislature (H.B. 695, 1. 1061). We think it quite evident that the legislative intent in the enactment of House Bill 695 was to accomplish a dual purpose: First, to clarify the law by specifically authorizing resale by public or private sale or property sold under foreclosure for delinquent taxes and acquired by the taxing units under the provisions of Article 7345b; and, second, to confirm and validate such sales as had been made prior thereto but which through lack of an express statutory authority or erroneous construction of the law had rendered such sales and the conveyances made thereunder invalid, even though the sales and conveyances were made by the taxing units in the utmost good faith.

We are only concerned here with the validating portion of this act, for all the proceedings with which we are here concerned transpired prior to this amendment. Judge Atwell in the case of In re American Rio Grande Land & Irrigation Co., 21 F.Supp. 492, has well stated the scope of a validating act in the following language:

"Validating, seems to me, to cure something that was intended but which was done imperfectly. . . .

"Validate is a derivative of valid, and means to make valid; to confirm. . . .

"These definitions presuppose antecedent facts which, in themselves, though attempting validity, had been insufficient to accomplish it. . . . "

As said by the Superior Court of Pennsylvania in the case of Petition of Miller, Appeal of Borough of Northampton, 28 A.2d 257:

"The purpose of a validating statute is to cure past errors, omissions and neglects, and thus to make valid what, before its enactment, was invalid."

There is no reason why the Legislature might not have designated the sheriff or constable, either or both, as the proper official to make second public sales of land held or acquired by taxing units in tax foreclosure suits, but it chose to designate only the sheriff. What the Legislature may have legally done in the first instance it may ratify, validate, and confirm by a validating act, such as now provided in Section 9 of Article 7345b, supra. There is nothing in this validating portion of the amendment to Section 9 forbidden by the Constitution or public policy. It is expressed in plain and unambiguous language, and we must give it effect as a valid act in the absence of any constitutional provision to the contrary.

You are therefore advised that it is our opinion that these sales, although made by the constable and not the sheriff, must be treated as valid under the express terms of the validating act (H.B. 695, Acts 50th Leg., p. 1061), and that the tax assessor-collector is authorized to receive the correct proportion of the State and county taxes tendered by the City of Mineola, and issue receipt accordingly.

Opinions Nos. 0-6479 and 0-7159 heretofore rendered by this office, in so far as in conflict with this opinion, are expressly overruled.

## SUMMARY

A constable has coordinate power with the sheriff to execute an order of sale in making first sales in delinquent tax foreclosures and to make a deed to the purchaser pursuant thereto, but does not have authority to make a second sale in behalf of purchasing taxing units as provided in Section 9 of Article 7345b, V.C.S. Only the sheriff may make such sales. The amendment to Section 9 of Article 7345b by House Bill 695, 50th Legislature, page 1061, has the effect of validating such second sales made by constables. The assessor-collector is authorized to receive the State and county taxes from the purchasing taxing unit as a result of second sales by constables.

Yours very truly,

PRICE DANIEL
Attorney General

By $\mathcal{L} \mathcal{P}. \mathcal{L}ollar$

APPROVED:

L. P. Lollar
Assistant

W. V. Geppert
Taxation Division

Joe Greenhill
First Assistant

LPL/mwb